**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHICANOS POR LA CAUSA, INC.;
SOMOS AMERICA,
                    *Plaintiffs-Appellants,*

                    and

ARIZONA EMPLOYERS FOR
IMMIGRATION REFORM INC.;
CHAMBER OF COMMERCE OF THE
UNITED STATES; ARIZONA
CHAMBER OF COMMERCE; ARIZONA
HISPANIC CHAMBER OF COMMERCE;
ARIZONA FARM BUREAU
FEDERATION; ARIZONA
RESTAURANT AND HOSPITALITY
ASSOCIATION; ASSOCIATED MINORITY
CONTRACTORS OF AMERICA; ARIZONA
ROOFING CONTRACTORS
ASSOCIATION; NATIONAL ROOFING
CONTRACTORS ASSOCIATION; WAKE
UP ARIZONA! INC.; ARIZONA
LANDSCAPE CONTRACTORS'
ASSOCIATION; ARIZONA
CONTRACTORS ASSOCIATION,
                    *Plaintiffs,*

                    v.

JANET NAPOLITANO; TERRY GODDARD;
GALE GARRIOTT,
                    *Defendants-Appellees.*

No. 07-17272

D.C. No.
CV-07-01355-NVW

CHICANOS POR LA CAUSA, INC.;
SOMOS AMERICA,
                              *Plaintiffs,*

                      and

ARIZONA EMPLOYERS FOR
IMMIGRATION REFORM INC.;
CHAMBER OF COMMERCE OF THE
UNITED STATES; ARIZONA
CHAMBER OF COMMERCE; ARIZONA
HISPANIC CHAMBER OF COMMERCE;
ARIZONA FARM BUREAU
FEDERATION; ARIZONA
RESTAURANT AND HOSPITALITY
ASSOCIATION; ASSOCIATED MINORITY
CONTRACTORS OF AMERICA; ARIZONA
ROOFING CONTRACTORS
ASSOCIATION; NATIONAL ROOFING
CONTRACTORS ASSOCIATION; WAKE
UP ARIZONA! INC.; ARIZONA
LANDSCAPE CONTRACTORS'
ASSOCIATION; ARIZONA
CONTRACTORS ASSOCIATION,
                *Plaintiffs-Appellants,*

                      v.

JANET NAPOLITANO; TERRY GODDARD;
GALE GARRIOTT,
                *Defendants-Appellees.*

No. 07-17274
D.C. No.
CV-07-01355-NVW

Arizona Contractors Association, Inc.; Arizona Employers for Immigration Reform Inc.; Chamber of Commerce of the United States; Arizona Chamber of Commerce; Arizona Hispanic Chamber of Commerce Inc.; Arizona Farm Bureau Federation; Arizona Restaurant and Hospitality Association; Associated Minority Contractors of America; Arizona Roofing Contractors Association; National Roofing Contractors Association; Arizona Landscape Contractors' Association,

*Plaintiffs-Appellants,*

and

Wake Up Arizona! Inc.; Valle Del Sol Inc.; Chicanos Por La Causa, Inc.; Somos America,

*Plaintiffs,*

v.

CRISS CANDELARIA; ED
RHEINHEIMER; TERRENCE HANER;
DAISY FLORES; KENNY ANGLE;
DEREK D. RAPIER; MARTIN
BRANNAN; ANDREW P. THOMAS;
MATTHEW J. SMITH; JAMES CURRIER;
BARBARA LAWALL; JAMES P.
WALSH; GEORGE SILVA; SHEILA
POLK; JON SMITH; TERRY GODDARD;
FIDELIS V. GARCIA; GALE
GARRIOTT; MELVIN R. BOWERS Jr.,
          *Defendants-Appellees.*

No. 08-15357

D.C. Nos.
CV-07-02496-NVW
CV-07-02518-NVW

Arizona Contractors Association, Inc.; Arizona Employers for Immigration Reform Inc.; Chamber of Commerce of the United States; Arizona Chamber of Commerce; Arizona Hispanic Chamber of Commerce Inc.; Arizona Farm Bureau Federation; Arizona Restaurant and Hospitality Association; Associated Minority Contractors of America; Arizona Roofing Contractors Association; National Roofing Contractors Association; Arizona Landscape Contractors' Association,

*Plaintiffs,*

and,

Wake Up Arizona! Inc.; Valle Del Sol Inc.; Chicanos Por La Causa, Inc.; Somos America,

*Plaintiffs-Appellants,*

v.

CRISS CANDELARIA; ED
RHEINHEIMER; TERRENCE HANER;
DAISY FLORES; KENNY ANGLE;
DEREK D. RAPIER; MARTIN
BRANNAN; ANDREW P. THOMAS;
MATTHEW J. SMITH; JAMES CURRIER;
BARBARA LAWALL; JAMES P.
WALSH; GEORGE SILVA; SHEILA
POLK; JON SMITH; TERRY GODDARD;
FIDELIS V. GARCIA; GALE
GARRIOTT; MELVIN R. BOWERS JR.,
          *Defendants-Appellees.*

No. 08-15359
D.C. Nos.
CV-07-02496-NVW
CV-07-02518-NVW

ARIZONA CONTRACTORS ASSOCIATION, INC.; ARIZONA EMPLOYERS FOR IMMIGRATION REFORM INC.; CHAMBER OF COMMERCE OF THE UNITED STATES; ARIZONA CHAMBER OF COMMERCE; ARIZONA HISPANIC CHAMBER OF COMMERCE INC.; ARIZONA FARM BUREAU FEDERATION; ARIZONA RESTAURANT AND HOSPITALITY ASSOCIATION; ASSOCIATED MINORITY CONTRACTORS OF AMERICA; ARIZONA ROOFING CONTRACTORS ASSOCIATION; NATIONAL ROOFING CONTRACTORS ASSOCIATION; ARIZONA LANDSCAPE CONTRACTORS' ASSOCIATION,

*Plaintiffs,*

VALLE DEL SOL INC.; CHICANOS POR LA CAUSA, INC.; SOMOS AMERICA,

*Plaintiffs,*

and

WAKE UP ARIZONA! INC.,

*Plaintiff-Appellant,*

v.

Criss Candelaria; Ed
Rheinheimer; Terrence Haner;
Daisy Flores; Kenny Angle;
Derek D. Rapier; Martin
Brannan; Andrew P. Thomas;
Matthew J. Smith; James Currier;
Barbara Lawall; James P.
Walsh; George Silva; Sheila
Polk; Jon Smith; Terry Goddard;
Fidelis V. Garcia; Gale
Garriott; Melvin R. Bowers Jr.,
            *Defendant-Appellant.*

No. 08-15360

D.C. Nos.
CV-07-02496-NVW
CV-07-02518-NVW

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
June 12, 2008—San Francisco, California

Filed September 17, 2008
Amended March 9, 2009

Before: Mary M. Schroeder, John M. Walker, Jr.,* and
N. Randy Smith, Circuit Judges.

Opinion by Judge Schroeder

*The Honorable John M. Walker, Jr., Senior United States Circuit
Judge for the Second Circuit, sitting by designation.

**COUNSEL**

Jonathan Weissglass, San Francisco, California, attorney for plaintiffs/appellants.

Mary O'Grady, Phoenix, Arizona, for the State defendants/appellees.

Roger W. Hall, Phoenix, Arizona, for defendant/appellees, Apache, Cochise, Gila, Graham, Greenlee, La Paz, Navajo, Santa Cruz, and Yavapai Counties.

Daniel Jurkowitz, Tucson, Arizona, for defendant/appellee, Pima County.

## ORDER

The Opinion filed on September 17, 2008, and appearing at 544 F.3d 976, is amended as follows: on slip Opinion page 13076, lines 21-22, change heading "B." to read:

*B.    The Act's provisions mandating the use of E-Verify and creating potentially harsh sanctions are not impliedly preempted by federal law.*

The Opinion filed on September 17, 2008, and appearing at 544 F.3d 976, is further amended as follows: on slip Opinion page 13078, line 14, insert the following text:

> Plaintiffs also argue that the Act's potential sanctions of suspension or revocation of an employer's business license impliedly conflict with IRCA because the Act's sanctions are harsher than IRCA's monetary sanctions. Plaintiffs urge that the harsh sanctions, even though expressly saved from express preemption, have the effect of encouraging employers to discriminate, and that such an effect would conflict with IRCA's purposes. Their argument is essentially speculative, as no complaint has yet been filed under the Act and we have before us no record reflecting the Act's effect on employers. There is

thus no adequate basis in this record for holding that the sanctions provisions create an implied conflict rendering the Act facially invalid. *See Crawford*, 128 S. Ct. at 1621-22.

With these amendments, the panel judges have voted to deny the petition for panel rehearing. Judges Schroeder and N.R. Smith have voted to deny the petition for rehearing en banc, and Judge Walker so recommends.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and petition for rehearing en banc are DENIED. No further petitions for rehearing or rehearing en banc will be accepted.

---

**OPINION**

SCHROEDER, Circuit Judge:

This case is a facial challenge to an Arizona state law, enacted in 2007 and aimed at illegal immigration, that reflects rising frustration with the United States Congress's failure to enact comprehensive immigration reform. The Arizona law, called the Legal Arizona Workers Act, targets employers who hire illegal aliens, and its principal sanction is the revocation of state licenses to do business in Arizona. It has yet to be enforced against any employer.

Various business and civil-rights organizations (collectively, "plaintiffs") brought these actions against the fifteen county attorneys of the state of Arizona, the Governor of Arizona, the Arizona Attorney General, the Arizona Registrar of Contractors, and the Director of the Department of Revenue

of Arizona (collectively, "defendants"). Plaintiffs allege that the Legal Arizona Workers Act ("the Act"), Ariz. Rev. Stat. §§ 23-211 to 23-216, is expressly and impliedly preempted by the federal Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. §§ 1324a-1324b, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), codified in various sections of 8 U.S.C. and 18 U.S.C. They also allege that the Act violates employers' rights to due process by denying them an opportunity to challenge the federal determination of the work-authorization status of their employees before sanctions are imposed.

The district court held that the law was not preempted. The main argument on appeal is that the law is expressly preempted by the federal immigration law provision preempting state regulation "other than through licensing and similar laws." 8 U.S.C. § 1324a(h)(2). The district court correctly determined that the Act was a "licensing" law within the meaning of the federal provision and therefore was not expressly preempted.

There is also a secondary, implied preemption issue that principally relates to the provision requiring employers to use the electronic verification system now being refined by the federal government as a tool to check the work-authorization status of employees through federal records. It is known as E-Verify. Under current federal immigration law, use of the system is voluntary, and the Arizona law makes it mandatory. We hold that such a requirement to use the federal verification tool, for which there is no substitute under development in either the state, federal, or private sectors, is not expressly or impliedly preempted by federal policy.

Plaintiffs also contend that the statute does not guarantee employers an opportunity to be heard before their business licenses may be revoked. The statute can and should be reasonably interpreted to allow employers, before any license

can be adversely affected, to present evidence to rebut the presumption that an employee is unauthorized.

We uphold the statute in all respects against this facial challenge, but we must observe that it is brought against a blank factual background of enforcement and outside the context of any particular case. If and when the statute is enforced, and the factual background is developed, other challenges to the Act as applied in any particular instance or manner will not be controlled by our decision. *See Crawford v. Marion County Election Bd.*, ___ U.S. ___, 128 S. Ct. 1610, 1621 (2008) (describing heavy burden of persuasion to sustain a broad attack on the facial validity of a statute in all its applications).

## Background

Sanctions for hiring unauthorized aliens were first created at the federal level when Congress passed IRCA in 1986. *See* Pub. L. No. 99-603, 100 Stat. 3359 (1986). IRCA prohibits knowingly or intentionally hiring or continuing to employ an unauthorized alien, 8 U.S.C. § 1324a(a), which it defines as an alien either not lawfully admitted for permanent residence or not authorized to be employed by IRCA or the U.S. Attorney General, 8 U.S.C. § 1324a(h)(3).

IRCA also sets out the method of demonstrating an employer's compliance with the law through a paper-based method of verifying an employee's eligibility, known as the I-9 system. *Id.* § 1324a(b). It requires employees to attest to their eligibility to work and to present one of the specified identity documents. *Id.* § 1324a(b)(1), (2). IRCA then requires employers to examine the identity document the employee presents and attest that it appears to be genuine. *Id.* § 1324a(b)(1)(A). The employer is entitled to a defense to sanctions if the employer shows good-faith compliance with the I-9 system, unless the employer has engaged in a pattern or practice of violations. *Id.* § 1324a(b)(6).

The Attorney General is charged with enforcing violations of IRCA. *Id.* § 1324a(e). Hearings are held before selected administrative law judges ("ALJs"), and the ALJs' decisions are reviewable by the federal courts. *Id.* § 1324a(e)(3).

IRCA contains an express preemption provision, which states: "The provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." *Id.* § 1324a(h)(2). The scope of the savings clause, which permits state "licensing and similar laws," is a critical issue in this appeal.

IIRIRA directed the Attorney General to establish three pilot programs to ensure efficient and accurate verification of any new employee's eligibility for employment. Pub. L. No. 104-208, §§ 401-405, 110 Stat. 3009, 3009-655 to 3009-666. One of these programs, the Basic Pilot Program, was to be made available in at least five of the seven states with the highest estimated populations of aliens not lawfully present in the United States. *Id.* § 401(c), 110 Stat. at 3009-656. Congress amended IIRIRA in 2002 by extending the four-year period for the pilot programs to a six-year period, *see* Basic Pilot Extension Act of 2001, Pub. L. No. 107-128, § 2, 115 Stat. 2407, 2407 (2002), and again in 2003 by extending the six-year period to an eleven-year period, *see* Basic Pilot Program Extension and Expansion Act of 2003 ("Expansion Act"), Pub. L. No. 108-156, § 2, 117 Stat. 1944, 1944 (2003). The Basic Pilot Program has thus been extended until November 2008. The Expansion Act also expanded the availability of the Basic Pilot Program to all fifty states. *See id.* § 3.

The Basic Pilot Program, now known as E-Verify, is an internet-based system that allows an employer to verify an employee's work-authorization status. It is an alternative to the I-9 system. After an employer submits a verification request for an employee, E-Verify either issues a confirmation

or a tentative nonconfirmation of work-authorization status. If a tentative nonconfirmation is issued, the employer must notify the employee, who has eight days to challenge the finding. The employer cannot take any adverse action against the employee during that time. If an employee does challenge the tentative nonconfirmation, the employer will be informed of the employee's final work-authorization status. Any employee who either does not challenge a tentative nonconfirmation or is unsuccessful in challenging a tentative nonconfirmation must be terminated, or the employer must notify the Department of Homeland Security ("DHS") that it will continue to employ that person. An employer who fails to notify DHS of the continued employment of a person who received a final nonconfirmation is subject to a civil money penalty. An employer who continues to employ a person after receiving a final nonconfirmation is subject to a rebuttable presumption that it knowingly employed an unauthorized alien.

Against this federal backdrop, we turn to the state law at issue here. Arizona enacted the Legal Arizona Workers Act on July 2, 2007, with an effective date of January 1, 2008. 2007 Ariz. Sess. Laws Ch. 279. The Act allows the superior courts of Arizona to suspend or revoke the business licenses of employers who knowingly or intentionally hire unauthorized aliens. Ariz. Rev. Stat. § 23-212. Any person may submit a complaint to the Arizona Attorney General or a county attorney. *Id.* § 23-212(B). After determining a complaint is not false or frivolous, the appropriate county attorney is charged with bringing an action against the employer in superior court. *Id.* § 23-212(C), (D). The Act uses IRCA's definition of "unauthorized alien." *See id.* § 23-211(11). Additionally, the Act requires that the court use the federal government's determination of the employee's lawful status. *Id.* § 23-212(H).

The Act makes participation in E-Verify mandatory for all employers, although it provides no penalty for violation of the requirement. *See id.* § 23-214(A). The Act also includes an

affirmative defense for good-faith compliance, explicitly incorporating IRCA. *See id.* § 23-212(J).

The Act mandates a graduated series of sanctions for violations. A first violation requires the employer to terminate the employment of all unauthorized aliens, file quarterly reports of all new hires for a probationary period, and file an affidavit stating that it terminated all unauthorized aliens and will not intentionally or knowingly hire any others. *Id.* §§ 23-212(F)-212.01(F). A second violation during the probationary period results in the permanent revocation of the employer's business license. *Id.* §§ 23-212(F)(2), (3), 23-212.01(F)(2), (3).

Plaintiffs originally filed an action challenging the Act on July 13, 2007, less than one month after the Act's enactment. The district court dismissed the first action for lack of subject matter jurisdiction because it did not name as defendants any of Arizona's county attorneys, who have the responsibility of enforcing the Act.

In December 2007, plaintiffs filed a second complaint, this time including the Arizona county attorneys as defendants. The principal contentions were that the Act was expressly preempted by federal law because the Act was not a "licensing" or "similar" law within the meaning of the savings clause of IRCA's preemption provision; that, even if the Act was not expressly preempted, it was impliedly preempted because its sanctions provisions and E-Verify requirement conflict with federal law; and that the Act violated employers' due process rights because it did not allow them an adequate opportunity to dispute the federal government's response that an employee was not authorized to work.

The matter proceeded to hearing, and the district court dismissed the Arizona Attorney General for lack of subject matter jurisdiction, because he lacks the authority to bring enforcement actions. The court ruled in favor of the remaining defendants on the merits. It held that the Act is not expressly

preempted by IRCA because the Act is a licensing law within the meaning of the savings clause. It held that neither the Act's sanctions provisions, nor the provision mandating use of E-Verify, was inconsistent with federal policy, and thus they were not impliedly preempted. Finally, the court held that the Act did not, on its face, violate due process because employers' due process rights were adequately protected. Plaintiffs now appeal.

## Discussion

### I.   Preemption

Federal preemption can be either express or implied. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982). When a federal statute contains an explicit preemption provision, we are to " 'identify the domain expressly pre-empted' by that language." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992)). IRCA contains an express preemption clause in its provision creating sanctions for hiring unauthorized aliens. It preempts all state sanctions "other than through licensing and similar laws." 8 U.S.C. § 1324a(h)(2). Plaintiffs contend that the Act is expressly preempted.

Implied preemption has two subcategories. *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001). The first is field preemption, where "the depth and breadth of a congressional scheme . . . occupies the legislative field." *Id.* (citing *Fid. Fed. Sav.*, 458 U.S. at 153). The second is conflict preemption, which occurs when either " 'compliance with both federal and state regulations is a physical impossibility,' " *Fid. Fed. Sav.*, 458 U.S. at 152 (quoting *Fla. Lime & Avocado Growers, Inc.*, 373 U.S. 132, 142-43 (1963)), or where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *id.* (internal quotation marks omitted) (quoting *Hines v. David-*

*owitz*, 312 U.S. 52, 67 (1941)). For conflict preemption to apply, the conflict must be an actual conflict, not merely a hypothetical or potential conflict. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 89 (1990). Plaintiffs contend that even if the entire Act is not expressly preempted, the mandatory requirement to use E-Verify is impliedly preempted because it conflicts with the voluntary program in IIRIRA.

*A. The Act is not expressly preempted because it falls within IRCA's savings clause.*

[1] The explicit preemption provision in IRCA states: "The provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." 8 U.S.C. § 1324a(h)(2). The parties agree that the Act is expressly preempted by IRCA unless it falls within the savings clause of IRCA's express preemption provision. Plaintiffs argue that the Act does not fall within the savings clause because they contend the Act is not a "licensing law" within the ordinary meaning of the phrase, and that the savings clause was not intended to permit a state to create an adjudication and enforcement system independent of federal enforcement of IRCA violations.

The district court held that the plain language of section 1324a(h)(2) does not facially preempt the Act because it does no more than impose conditions on state licenses to do business and thus falls within the savings clause. *Ariz. Contractors Ass'n v. Candelaria*, 534 F. Supp. 2d 1036, 1046-47 (D. Ariz. 2008). The court rejected plaintiffs' argument that section 1324a(h)(2) permits only licensing sanctions that are preceded by a federal adjudication of employer liability, reasoning that neither the plain language of section 1324a(h)(2) nor the legislative history supports plaintiffs' position. *Id.* at 1046-48.

**[2]** The district court also rejected plaintiffs' argument that the savings clause should be interpreted narrowly, holding that because regulation in the employment field is traditionally an area of state concern, there is a presumption against preemption. *Id.* at 1050-52. An issue central to our preemption analysis is thus whether the subject matter of the state law is in an area of traditionally state or federal presence. When Congress legislates "in a field which the States have traditionally occupied . . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 108 (2000) (internal quotation marks omitted) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Conversely, we do not assume non-preemption "when the State regulates in an area where there has been a history of significant federal presence." *Id.*

**[3]** A leading case involving the employment of illegal aliens is *De Canas v. Bica*, 424 U.S. 351 (1976). The Supreme Court there upheld a state law prohibiting the employment of unauthorized aliens against a preemption challenge because it concluded that the authority to regulate the employment of unauthorized workers is "within the mainstream" of the state's police powers. *Id.* at 356, 365. The Court reasoned that "the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *Id.* at 355.

**[4]** Plaintiffs argue that reliance on *De Canas* is now misplaced because IRCA, passed after *De Canas*, brought the regulation of unauthorized employees within the scope of federal immigration law. They rely on language in a later case where the Court said that IRCA made the employment of unauthorized workers "central to '[t]he policy of immigration law.' " *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S.

137, 147 (2002) (quoting *INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 194 & n.8 (1991)) (alteration in original). That case, however, did not involve preemption, or indeed any state regulation. It considered whether the National Labor Relations Board ("NLRB") could award back-pay to an unauthorized worker, and the Court held it could not. The Court said that the NLRB had impermissibly "trench[ed] upon federal statutes and policies unrelated to the [National Labor Relations Act]" by awarding backpay to an unauthorized alien worker who was improperly terminated from his employment for participating in union-related activities. *Id.* at 140, 141, 144. Because it did not concern state law or the issue of preemption, *Hoffman* did not affect the continuing vitality of *De Canas*. We conclude that, because the power to regulate the employment of unauthorized aliens remains within the states' historic police powers, an assumption of non-preemption applies here.

Plaintiffs contend that the term "license" was intended to encompass only licenses to engage in specific professions, such as medicine or law, and not licenses to conduct business. There is no support for such an interpretation. "Licensing" generally refers to "[a] governmental body's process of issuing a license," *Black's Law Dictionary* 940 (8th ed. 2004), and a "license" is "a permission, usually revocable, to commit some act that would otherwise be unlawful," *id.* at 938. The Act provides for the suspension of employers' licenses to do business in the state. *See* Ariz. Rev. Stat. § 23-212(F). Such licenses are defined as "any agency permit, certificate, approval, registration, charter or similar form of authorization that is required by law and that is issued by any agency for the purposes of operating a business in this state." *Id.* § 23-211(9)(a). The statute's broad definition of "license" is in line with the terms traditionally used and falls within the savings clause. The language of the savings clause therefore exempts such state licensing regulation from express preemption. A recent district court case that considered the same issue reached the same conclusion. *See Gray v. City of Valley Park*,

No. 4:07CV00881 ERW, 2008 WL 294294, at *8, 10, 12 (E.D. Mo. Jan. 31, 2008) (holding that city ordinance governing issuance and denial of business permits fell within meaning of savings clause). *But see Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 519-21 (M.D. Pa. 2007) (concluding that state law prohibiting employment of illegal aliens was expressly preempted by IRCA).

Plaintiffs nevertheless contend that the legislative history demonstrates that Congress intended the savings clause to permit states to impose a state sanction only after there had been a federal determination of an alien's unauthorized status. Plaintiffs rely on the second sentence in a paragraph from Part I of House Report 99-682, which as a whole states:

> The penalties contained in this legislation are intended to specifically preempt any state or local laws providing civil fines and/or criminal sanctions on the hiring, recruitment or referral of undocumented aliens. They are not intended to preempt or prevent lawful state or local processes concerning the suspension, revocation or refusal to reissue a license to any person who has been found to have violated the sanctions provisions in this legislation. Further, the Committee does not intend to preempt licensing or "fitness to do business laws," such as state farm labor contractor laws or forestry laws, which specifically require such licensee or contractor to refrain from hiring, recruiting or referring undocumented aliens.

H.R. Rep. No. 99-682(i), at 58 (1986) *as reprinted in* 1986 U.S.C.C.A.N. 5649, 5662. As the district court found, however, this paragraph as a whole does not support plaintiffs' argument. The paragraph describes the federal law as preempting "civil fines and/or criminal sanctions," neither of which the Act imposes. The paragraph does not suggest that the federal law would preempt local laws that suspend or

revoke licenses on the basis of IRCA violations, or state licensing laws that require employers not to hire unauthorized workers. As the district court concluded, plaintiffs' reading of the second sentence, as permitting enforcement only of state licensing regulations conditioned on federally adjudicated violations, is contradicted by the third sentence, which recognizes states can condition an employer's "fitness to do business" on hiring documented workers. That is what the Arizona Act does.

**[5]** In sum, the Act does not attempt to define who is eligible or ineligible to work under our immigration laws. It is premised on enforcement of federal standards as embodied in federal immigration law. The district court therefore correctly held that the Act is a "licensing" measure that falls within the savings clause of IRCA's preemption provision.

Plaintiffs finally contend that this kind of state regulation must be preempted because there is a potential for conflict in the practical operation of the state and federal law. They point to a hypothetical situation in which an employer may be subject to conflicting rulings from state and federal tribunals on the basis of the same hiring situation. Whether principles of comity or issue preclusion would allow such a result are questions not addressed by the parties. In any event, a speculative, hypothetical possibility does not provide an adequate basis to sustain a facial challenge. *See Crawford*, 128 S. Ct. at 1621.

*B. The Act's provisions mandating the use of E-Verify and creating potentially harsh sanctions are not impliedly preempted by federal law.*

Plaintiffs argue that the Arizona provision mandating the use of E-Verify is impliedly preempted because it conflicts with Congressional intent to keep the use voluntary. They contend that Congress wanted to develop a reliable and non-burdensome system of work-authorization verification, and that mandatory use of E-Verify impedes that purpose. They

rely on the Supreme Court's decision in *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000). *Geier* recognized that state laws that fall within a savings clause and are therefore not expressly preempted are still subject to the "ordinary working of conflict pre-emption principles." *Id.* at 869. A state law is preempted through conflict preemption when it " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* at 873 (quoting *Hines*, 312 U.S. at 67). *Geier* involved a Department of Transportation regulation that was designed to encourage competition among automobile manufacturers to design effective and convenient passive-restraint systems. The regulation required only 10% of a car manufacturer's production to include airbags. The Court in *Geier* held that state tort law, permitting liability to be imposed for failure to provide airbags, conflicted with the federal policy to encourage development of different restraint systems. *Id.* at 886.

[6] The district court here held that Arizona's requirement that employers use E-Verify was not preempted because, while Congress made participation in E-Verify voluntary at the national level, that did not in and of itself indicate that Congress intended to prevent states from making participation mandatory. *Ariz. Contractors*, 534 F. Supp. 2d at 1055-56. We agree with that holding. Congress could have, but did not, expressly forbid state laws from requiring E-Verify participation. It certainly knew how to do so because, at the same time, it did expressly forbid "any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." 8 U.S.C. § 1324a(h)(2).

[7] Furthermore, this case is unlike *Geier*, where the Supreme Court found strong evidence of Congress's intent to promote competition and balance federal goals in a competitive environment encouraging alternative systems. Here, E-Verify is a federal government service that Congress has implicitly strongly encouraged by expanding its duration and

its availability (to all fifty states). *See* Basic Pilot Program Extension and Expansion Act of 2003, Pub. L. No. 108-156, 117 Stat. 1944, 1944; Basic Pilot Extension Act of 2001, Pub. L. No. 107-128, sec. 2, 115 Stat. 2407, 2407. Though Congress did not mandate E-Verify, Congress plainly envisioned and endorsed an increase in its usage. The Act's requirement that employers participate in E-Verify is consistent with and furthers this purpose, and thus does not raise conflict preemption concerns.

Appellants contend that conflict preemption is a concern here also because of the Act's potentially discriminatory effects. Their argument is that E-Verify increases discrimination against workers who look or sound "foreign," and that mandatory E-Verify usage thus upsets the enforcement/discrimination balance that Congress has maintained by keeping E-Verify optional. This argument fails because Congress requires employers to use either E-Verify or I-9, and appellants have not shown that E-Verify results in any greater discrimination than I-9.

Plaintiffs also argue that the Act's potential sanctions of suspension or revocation of an employer's business license impliedly conflict with IRCA because the Act's sanctions are harsher than IRCA's monetary sanctions. Plaintiffs urge that the harsh sanctions, even though expressly saved from express preemption, have the effect of encouraging employers to discriminate, and that such an effect would conflict with IRCA's purposes. Their argument is essentially speculative, as no complaint has yet been filed under the Act and we have before us no record reflecting the Act's effect on employers. There is thus no adequate basis in this record for holding that the sanctions provisions create an implied conflict rendering the Act facially invalid. *See Crawford,*128 S. Ct. at 1621-22.

## II.  Due Process

The deprivation of a property interest must " 'be preceded by notice and opportunity for hearing appropriate to the

nature of the case.' " *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). An Arizona business license is a property interest. *See, e.g.*, *Comeau v. Ariz. State Bd. of Dental Exam'rs*, 993 P.2d 1066, 1070 (Ariz. Ct. App. 1999). An opportunity to be heard must be " 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Employers thus should be given an opportunity to be heard before their business licenses are suspended or revoked under the Act.

The Act sets forth the procedures to be followed in bringing an enforcement action. Any person may submit a complaint about a suspected violation to either the Arizona Attorney General or a county attorney. Ariz. Rev. Stat. § 23-212(B). The Attorney General or county attorney investigating a complaint must verify the alleged unauthorized alien's work-authorization status with the federal government pursuant to 8 U.S.C. § 1373; the state official is prohibited from attempting to make an independent determination of the alien's status. *Id.* After a complaint is investigated and found not to be false or frivolous, a county attorney must bring an enforcement action against the employer in state court in the county in which the alien was employed. *Id.* § 23-212(C), (D). The court is to expedite the action, which includes scheduling the hearing as quickly as is practicable. *Id.* § 23-212(E).

Subsection (H) of section 212 describes the state court's procedures to obtain information from the federal government on whether an alien was unauthorized to work:

> On [sic] determining whether an employee is an unauthorized alien, the court shall consider only the federal government's determination pursuant to 8 United States Code § 1373(c). The federal government's determination creates a rebuttable presumption of the employee's lawful status. The court may

take judicial notice of the federal government's determination and may request the federal government to provide automated or testimonial verification pursuant to 8 United States Code § 1373(c). *Id.* § 23-212(H). Section 1373(c) of title 8 of the U.S. Code provides that the Immigration and Naturalization Service "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c).

Plaintiffs contend, in this facial challenge, that the Act violates due process because it deprives employers of their business licenses without providing them an adequate opportunity to dispute whether an employee was authorized to work. Plaintiffs rely on the first sentence of subsection (H) to argue that the Act prohibits employers at the state-court hearing from presenting any evidence to rebut the federal government's § 1373 response on the issue of the employee's work status. Defendants, however, point to the second sentence of subsection (H), which provides that the federal response creates only a rebuttable presumption. They contend that the employer can rebut the federal response with other evidence during a hearing.

**[8]** Plaintiffs' interpretation of subsection (H) is flawed because it gives no meaning to the second sentence of the provision. That sentence at least implicitly contemplates a hearing to rebut the presumption created by the federal determination of an employee's unauthorized status. *See* Ariz. Rev. Stat. § 23-212(H). Arizona law, consistent with ordinary principles of statutory interpretation, requires that " '[e]ach word, phrase, clause, and sentence [of a statute] must be given meaning so that no part will be void, inert, redundant, or trivial.' " *Williams v. Thude*, 934 P.2d 1349, 1351 (Ariz. 1997)

(second alteration in original) (emphasis omitted) (quoting *City of Phoenix v. Yates*, 208 P.2d 1147, 1149 (Ariz. 1949)). We conclude that the statute provides an employer the opportunity, during the state court proceeding, to present rebuttal evidence.

Furthermore, defendants explain any apparent incongruity between the first two sentences of subsection (H) by pointing to parallel language found in an earlier subsection, subsection (B), which relates to the initial investigation of a complaint:

> When investigating a complaint, the attorney general or county attorney shall verify the work authorization of the alleged unauthorized alien with the federal government pursuant to 8 United States Code § 1373(c). A state, county or local official shall not attempt to independently make a final determination on whether an alien is authorized to work in the United States.

Ariz. Rev. Stat. § 23-212(B). Defendants explain that this section, like the first sentence of subsection (H), provides, somewhat inartfully, that the initial investigation and the basis for bringing an enforcement action must be limited to the federal response, thereby precluding independent state investigation. The employer would then have the opportunity to present evidence. The district court agreed. The district court persuasively reasoned that requiring the state or county to obtain a federal determination of an employee's work status before bringing proceedings may be intended to protect employees from direct investigation by the state.

**[9]** We therefore conclude that the district court correctly determined that the Act provides sufficient process to survive this facial challenge. More importantly, the district court also found that the statute does not preclude the presentation of counterevidence when an employer's liability is at issue, *Ariz. Contractors*, 534 F. Supp. 2d at 1058, and we agree with this

interpretation. An employer's opportunity to present evidence at a hearing in superior court, in order to rebut the presumption of the employee's unauthorized status, provides the employer a meaningful opportunity to be heard before sanctions are imposed. We conclude that subsection (H) is facially constitutional.

The district court's judgment is **AFFIRMED**.