**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDUARDO VELASQUEZ-RIOS,
*Petitioner*,

v.

ROBERT M. WILKINSON, Acting
Attorney General,
*Respondent.*

No. 18-72990

Agency No.
A200-154-815

SANJAY JOSEPH DESAI, AKA Sanjay
Joseph Andrews, AKA Joao Sergio
Karamano Soverano,
*Petitioner*,

v.

ROBERT M. WILKINSON, Acting
Attorney General,
*Respondent.*

No. 18-73218

Agency No.
A096-656-434

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 4, 2020
Pasadena, California

Filed October 28, 2020
Amended February 24, 2021

Before:  Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and David A. Ezra,* District Judge.

Order;
Opinion by Judge Gould

## SUMMARY**

### Immigration

The panel denied separate petitions for review filed by
Eduardo Velasquez-Rios and Sanjay Joseph Desai of
decisions of the Board of Immigration Appeals, and held that
an amendment to § 18.5 of the California Penal Code, which
retroactively reduces the maximum misdemeanor sentence
to 364 days, cannot be applied retroactively for purposes of
removability under 8 U.S.C. § 1227(a)(2)(A)(i).

Velasquez-Rios and Desai were both found ineligible for
cancellation of removal because they had been convicted of
offenses  under  § 1227(a)(2)(A)(i),  which—as  relevant
here—makes an alien removable if he or she committed a
crime involving moral turpitude for which a sentence of one
year or longer may be imposed.  Subsequently, on January

---

* The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

1, 2015, the California legislature enacted § 18.5, which reduced the maximum jail sentences for misdemeanor convictions to 364 days, and on January 1, 2017, the legislature amended § 18.5 to apply retroactively.

In *Matter of Velasquez-Rios*, 27 I. & N. Dec. 470 (BIA 2018), the BIA held that, for purposes of § 1227(a)(2)(A)(i), the maximum sentence available is determined by looking at the date of conviction. The BIA thus denied Velasquez-Rios' appeal because he could have been sentenced to up to one year of imprisonment when he was convicted, and the BIA later denied Desai's appeal for the same reason. Petitioners challenged *Matter of Velasquez-Rios* in this court, contending that the amendment to § 18.5 should apply to their cases retroactively such that they would be eligible for cancellation.

In holding that the amendment to § 18.5 cannot be applied retroactively for purposes of § 1227(a)(2)(A)(i), the panel rejected Petitioners' contention that the BIA erred by relying on two sentencing decisions: *McNeill v. United States*, 563 U.S. 816 (2011), and *United States v. Diaz*, 838 F.3d 968 (9th Cir. 2016). In *McNeil*, the Supreme Court held that retroactive changes to North Carolina's state-law sentencing scheme did not change the historical fact that the defendant had been convicted of two felonies. In *Diaz*, this court concluded that California's reclassification of Diaz's two felony convictions as misdemeanors did not invalidate his enhanced sentence under 21 U.S.C. § 841. This court held that § 841 called for a backward-looking inquiry to the date of conviction, rather than the current state of California law, and that the triggering event under § 841 was when the two felony offenses had "become final."

Petitioners argued that *Diaz* is inapposite because § 1227(a)(2)(A)(i) lacks any explicit reference to finality. In

rejecting that contention, the panel explained that: 1) the holding in *Diaz* was not limited to apply only where the operative statute is triggered by the finality of a conviction; and 2) even if the language of § 1227(a)(2)(A)(i) does not explicitly refer to the "finality" of a conviction, the language of § 1229b(b)(1)(C)—the cancellation of removal statute that cross-references § 1227(a)(2)—clearly calls for a backward-looking inquiry by requiring that an alien "*has not been*" convicted of an applicable offense.

The panel further explained that its approach aligns with the Supreme Court's admonishments that federal laws should be construed to achieve national uniformity, and explained that its decision avoids the "absurd" results described in *McNeill* that would follow from Petitioners' approach, under which an alien's removability would depend on the timing of the immigration proceeding. In addition, the panel observed that it declined to give retroactive effect to § 18.5 where it appeared that the purpose of the amendment was to circumvent federal law. The panel also rejected Petitioners' remaining counterarguments.

Finally, the panel discussed the concept of federalism, observing that, for more than a century, it has been universally acknowledged that Congress possesses sweeping authority over immigration policy. Accordingly, the panel held that federal law standards cannot be altered or contradicted retroactively by state law actions, and cannot be manipulated after the fact by state laws modifying sentences that at the time of conviction permitted removal or that precluded cancellation.

**COUNSEL**

Carlos A. Cruz (argued), Alhambra, California, for Petitioner Eduardo Velasquez-Rios.

Stacy Tolchin (argued) and Megan Brewer, Law Offices of Stacy Tolchin, Los Angeles, California; Katherine Brady and Rose Cahn, Immigrant Legal Resource Center, San Francisco, California; Khaled Alrabe, National Immigration Project of the National Lawyers Guild, Boston, Massachusetts; for Petitioner Sanjay Joseph Desai.

Alexander J. Lutz (argued), Trial Attorney; Jonathan Aaron Robbins (argued), Senior Litigation Counsel; Anthony C. Payne and Anthony P. Nicastro, Assistant Directors; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Andrew Wachtenheim, Leila Kang, and Nabilah Siddiquee, Immigrant Defense Project, New York, New York, for Amici Curiae American Immigration Lawyers Association, American Immigration Council, Detention Watch Network, Immigrant Defense Project, National Immigration Litigation Alliance, Northwest Immigrant Rights Project, California Public Defenders Association, Washington Defender Association, Six State Public Defender Offices, and Law Professors & Law School Clinics.

**ORDER**

The opinion in the above-captioned matters filed on October 28, 2020, and published at 979 F.3d 690, is amended as follows:

At slip opinion page 15, lines 1–2, replace <Cal. Penal Code § 17(b)(1)> with <Cal. Penal Code § 17(b)>.

At slip opinion page 15, line 15, replace <Cal. Penal Code § 17(b)(1)> with <Cal. Penal Code § 17(b)>.

The panel has voted to deny both Petitioner-Appellant Velasquez-Rios' and Petitioner-Appellant Desai's petitions for panel rehearing. Judges Gould and Ikuta have voted to deny both Petitioners-Appellants' petitions for rehearing en banc, and Judge Ezra has so recommended. The full court has been advised of the petitions for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petitions for panel rehearing and the petitions for rehearing en banc are denied.

No future petitions for rehearing or rehearing en banc will be entertained.

---

**OPINION**

GOULD, Circuit Judge:

In 2017, California's legislature retroactively reduced the maximum sentence available for misdemeanor convictions from one year to 364 days. In the cases appealed to us through Petitions for Review of the agency decisions, the Board of Immigrations Appeals ("BIA") considered

whether, for purposes of 8 U.S.C. § 1227(a)(2)(A)(i) (section 237(a)(2)(A)(i) of the Immigration and Naturalization Act ("INA"))—which provides a basis for rendering an alien ineligible for cancellation of removal proceedings under § 1229b(b)(1)(C)—that reduction could be applied retroactively. The BIA decided in *Matter of Velasquez-Rios* that it could not apply that statutory change retroactively. 27 I. & N. Dec. 470 (BIA 2018). In these consolidated appeals, Petitioners Sanjay Desai and Eduardo Velasquez-Rios contend that decision was in error, arguing that the BIA should have applied California's sentence reduction retroactively for purposes of cancellation of removal. We have jurisdiction under 8 U.S.C. § 1252. For the following reasons, we deny both petitions and affirm the BIA.

## I

Eduardo Velasquez-Rios is a native and citizen of Mexico who unlawfully entered the United States at an unknown time and place.[1] On July 22, 2002, he pled guilty to misdemeanor forgery under California Penal Code § 475(a) and was sentenced to twelve days in the Orange County Jail, eight days of community service, and a fine. At the time of conviction, Velasquez-Rios was eligible for a maximum sentence of "not more than one year." Cal. Penal Code § 473.

Sanjay Joseph Desai is a citizen and national of India who was admitted to the United States in 2000 as a non-

---

[1] Velasquez-Rios has asserted different entry dates—1997,1987, and "in or around" 1988—at various points throughout his immigration proceedings and before this Court. His entry date is not relevant to this appeal.

immigrant visitor with authorization to remain for six months. After overstaying his visa, Desai was convicted of misdemeanor grand theft under California Penal Code § 487, for which he was sentenced to 13 days in jail and 36 months of summary probation. At the time of conviction, Desai was eligible for a potential sentence of one year of imprisonment. Cal. Pen. Code §§ 487, 489(b).

The Department of Homeland Security initiated removal proceedings against Desai in 2011 and against Velasquez-Rios in 2012. Petitioners separately applied for cancellation of removal under 8 U.S.C. § 1229b(b). The immigration judges ("IJ") pretermitted both applications based on 8 U.S.C. § 1229b(b)(1)(C). That provision states, in relevant part, that "[t]he Attorney General may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title." 8 U.S.C. § 1229b(b)(1)(C). The IJs determined that Desai's forgery conviction and Velasquez-Rios' theft conviction constituted "offense[s] under" § 1227(a)(2)(A)(i), which says:

> (a) Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:
>
> (2) Criminal offenses
>
> (A) General crimes
>
> (i) Crimes of moral turpitude

Any alien who—

(I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and

(II) is convicted of a crime for which a sentence of one year or longer may be imposed,

is deportable.

8 U.S.C. § 1227(a)(2)(A)(i). Because Desai and Velasquez-Rios were convicted of "offenses under" § 1227(a)(2), the IJs concluded that they both were ineligible for cancellation of removal under the controlling statute.

Meanwhile, on January 1, 2015, the California legislature enacted California Penal Code § 18.5, which reduced the maximum jail sentences for misdemeanor convictions from "up to or not exceeding one year" to "a period not to exceed 364 days." Cal. Penal Code § 18.5 (2015).

Velasquez-Rios then appealed his removal to the BIA, arguing that his theft conviction no longer qualified as "an offense under" § 1227(a)(2) because the maximum possible sentence for his conviction had been reduced to 364 days. The BIA rejected that argument, noting that *at the time of his conviction*, the maximum sentence available was still one year. Velasquez-Rios then appealed to this Court.

In separate proceedings, Desai appealed the IJ's decision to the BIA, which remanded the matter to another IJ to consider whether Desai's theft conviction constituted a crime involving moral turpitude ("CIMT"), in light of any intervening precedent from this Court.

On remand, Desai told the IJ that he wished to accept an order of removal and appeal his case to the BIA, because recent BIA precedent had rendered his CIMT arguments moot at the lower stage of proceedings. Therefore, the IJ affirmed the earlier March 3, 2015 decision and entered the removal order on March 29, 2017. Desai again appealed to the BIA.

On January 1, 2017, while Desai's appeal to the BIA and Velasquez-Rios' appeal to our court were pending, the California legislature amended California Penal Code § 18.5 to apply *retroactively* to all misdemeanor convictions, regardless of whether the conviction was finalized on or before the statute's original enactment date. Cal. Penal Code § 18.5. We remanded Velasquez-Rios' case to the BIA to consider the effect, if any, of the purported retroactive application of § 18.5.

On remand, the BIA again dismissed Velasquez-Rios' appeal in a published decision. *Matter of Velasquez-Rios*, 27 I. & N. Dec. 470 (BIA 2018). In *Matter of Velasquez-Rios*, the BIA held that even though California's legislature had retroactively reduced the maximum sentence for purposes of state law, nonetheless, for purposes of federal law in § 1227(a)(2)(A)(i), the maximum sentence available is determined by looking at the actual date of conviction. *Id*. at 472. Because Velasquez-Rios could have been sentenced to up to one year of imprisonment when he was convicted, the BIA denied his appeal. *Id*. at 474.

Based on this precedential decision, and because the maximum sentence applicable when Desai was convicted was "up to one year," the BIA also denied his appeal on November 2, 2018.

Petitioners each timely filed a Petition for Review in our court.

## II

We review the BIA's legal determinations *de novo*. *Diaz-Jimenez v. Sessions*, 902 F.3d 955, 958 (9th Cir. 2018).

## III

Neither Petitioner disputes that when each was convicted in state court, the maximum sentence they could have received was up to one year of imprisonment. The key question before us is whether *Matter of Velasquez-Rios* was correctly decided or, as Petitioners contend, California's amendment to § 18.5 of the California Penal Code should have been applied to their cases retroactively for purposes of the cancellation of removal statute. We address each of Petitioners' principal arguments in turn, and we deny the Petitions for Review of the BIA decisions.[2]

---

[2] In his Petition for Review, Desai makes the additional arguments that the phrase "crime involving moral turpitude" is unconstitutionally vague, and that the BIA erred in concluding that an offense under § 1227(a)(2)(i) need not be a CIMT committed within five years of admission for cancellation of removal purposes. Both of these arguments lack merit. *See Ortega-Lopez v. Barr*, ___ F.3d ___, No. 18-72441 (9th Cir. Oct. 20, 2020). Velasquez-Rios also argues that he is eligible for cancellation of removal pursuant to the "petty offense" exception under § 1182(a)(2)(A)(ii)(II). Notwithstanding the "petty offense" exception, Velasquez-Rios' eligibility for cancellation of

First, Petitioners argue that the BIA erred by relying on two criminal sentencing decisions:  *United States v. Diaz*, 838 F.3d 968 (9th Cir. 2016), *cert. denied sub nom. Vasquez v. United States*, 137 S. Ct. 840 (2017), and *McNeill v. United States*, 563 U.S. 816 (2011).

In *McNeill*, the defendant was convicted of drug offenses in North Carolina state court.  *Id*. at 817–18.  After the state later reduced the maximum sentence available for those offenses, McNeill argued that the district court should have used the current, reduced maximum sentence in applying the Armed Career Criminal Act ("ACCA"), a federal sentencing statute.  *Id*.  The Supreme Court disagreed, holding that the ACCA "require[d] the court to determine whether a 'previous convictio[n]' was for a serious drug offense," and explained that the only way to answer that "backward-looking question" was to consult the law that applied at the time of conviction.  *Id*. at 820.  In other words, the retroactive changes to North Carolina's state-law sentencing scheme did not change the historical fact that the defendant had been convicted of two felonies.  *Id*.  However, in a footnote, the Supreme Court expressly noted that it did not address the potential effect of a state statute *retroactively* reducing the maximum sentence for the offense.  *Id*. at 825 n.1.

We confronted a similar issue in *Diaz*.  There, Diaz was convicted of drug-related crimes and sentenced to life imprisonment because his two prior California felony convictions triggered a mandatory sentence enhancement under 21 U.S.C. § 841.  *United States v. Diaz*, 838 F.3d 968, 975 (9th Cir. 2016).  Four years later, California adopted Proposition 47, under which state courts could reclassify

removal here depends on whether he has been "convicted of an offense under" § 1227(a)(2).

certain felony convictions as misdemeanors. *Id*. After a California state court re-classified Diaz's two felony convictions, Diaz sought to invalidate his federally-enhanced sentence. *Id*. Relying upon *McNeill*, we held that the statute called for a backward-looking inquiry to the initial date of conviction, rather than the current state of California law, and that the triggering event under § 841 was when the two felony drug offenses had "become final." *Id*. at 975; 21 U.S.C. § 841.

Seizing on the phrase "have become final," Petitioners argue that *Diaz* is inapposite because here, § 1227(a)(2)(A)(i) lacks any explicit reference to the finality of convictions. We decline to read *Diaz* so narrowly.

For one thing, we did not explicitly limit our holding in *Diaz* to apply only where the operative statute is triggered by the finality of a conviction. In fact, we relied heavily on *McNeill*, where the relevant ACCA provision contained no such language. *McNeill*, 563 U.S. at 819 ("[The] ACCA's sentencing enhancement applies to individuals who have 'three previous convictions . . . for a violent felony or a serious drug offense.'"). Moreover, even if the language of § 1227(a)(2)(A)(i) does not explicitly refer to the "finality" of a conviction, the language of § 1229b(b)(1)(C)—the operative statute which cross-references § 1227(a)(2), and under which Petitioners ultimately seek cancellation of removal—clearly calls for a backward-looking inquiry. It requires that an alien "*has not been*" convicted of an applicable offense, including a CIMT under § 1227(a)(2). 8 U.S.C. § 1229b(b)(1)(C) (emphasis added). As we held in *Diaz*, the "only way to answer this backward-looking question is to consult the law that applied at the time of that conviction." *Diaz*, 838 F.3d at 820. We see no reason why

the reasoning underpinning *Diaz* should apply with any less force here.

As in *Diaz*, we believe that our approach "aligns with the Supreme Court's repeated admonishments that federal laws should be construed to achieve national uniformity." *Diaz*, 838 F.3d at 974. Petitioners' proposed construction, by contrast, would require immigration judges and federal courts to apply the various statutes—including any retroactively applied amendments—of each state in a "patchwork fashion" to determine the immigration consequences of a particular offense. *Id.* An alien's eligibility for cancellation of removal based on a CIMT conviction would therefore "depend solely upon where the previous conviction had occurred." *Id.* (citing *United States v. Bergeman*, 592 F.2d 533, 537 (9th Cir. 1979)).

Our decision also avoids the "absurd" results described in *McNeill* that would follow from Petitioners' approach, under which an alien's removability would "depend on the timing of the [immigration] proceeding." *McNeill*, 563 U.S. at 823. For example, two aliens who had "identical criminal histories—down to the dates on which they committed and were sentenced for their prior offenses"—could receive different treatment under the cancellation of removal statute solely because one alien's immigration hearing "happened to occur after the state's legislature amended the punishment for one of the shared prior offenses." *Id.*

In addition, we decline to give retroactive effect to the California statute in the cancellation of removal context where it appears that the purpose of that state-law amendment is to circumvent federal law. The legislative history of the amendment to § 18.5 of the California Penal Code reveals that the amendment's retroactive application was designed to prevent the deportation of aliens who had

been convicted of misdemeanors before 2015. *See Sentencing: Misdemeanors: Hearing on Senate Bill 1242 before the California Senate Committee on Public Safety* (April 12, 2016) (Statement of Ricardo Lara) ("While SB 1310 aligned state and federal law on a prospective basis, it did not help those who were convicted of a misdemeanor prior to 2015 . . . SB 1242 will provide, on a retroactive basis that all misdemeanors are punishable for no more than 364 days and ensure that legal residents are not deported due to previous discrepancies between state and federal law.").

Nor are we persuaded by Petitioners' remaining attempts to distinguish *Diaz* and *McNeill*. Although Desai argues that *Diaz* is distinguishable because here, § 1227(a)(2)(A)(i) is "phrased in the present tense," the Supreme Court expressly rejected that same argument in *McNeill*. 563 U.S. at 820 (noting that the use of the present tense in the ACCA did not change the fact that the ACCA "is concerned with convictions that have already occurred.").

We acknowledge that *Diaz* and *McNeill* are not directly controlling because they dealt with criminal sentencing statutes. But our decision to extend their rationales to Petitioners' cases finds strong support in our existing immigration precedent. In *Prado v. Barr*, we held that "federal immigration law does not recognize a state's policy decision to expunge (or recall or reclassify) a valid state conviction." 949 F.3d 438, 441 (9th Cir. 2020). "This is because 'Congress intended to establish a uniform federal rule that precluded the recognition of subsequent state rehabilitative expungements of convictions.'" *Id*. (citing *Murillo-Espinoza v. I.N.S.*, 261 F.3d 771, 774 (9th Cir. 2001)). In our system, principles of federalism require that "[f]ederal law, not state law, governs our interpretation of federal statutes." *Diaz*, 838 F.3d at 972.

Nonetheless, Petitioners argue that our decision in *Garcia-Lopez v. Ashcroft* forecloses the BIA's decision in *Velasquez-Rios* and, by implication, our holding here. 334 F.3d 840, 846 (9th Cir. 2003), *overruled in part by Ceron v. Holder*, 747 F.3d 773, 778 (9th Cir. 2014). This is not so. That case concerned a California "wobbler" statute, under which an offense could be classified as either a misdemeanor or a felony at sentencing. 334 F.3d at 844; Cal. Penal Code § 17(b). Garcia-Lopez's offense was not classified as a misdemeanor or a felony when he accepted a guilty plea. *Id*. at 842. It was only after Garcia-Lopez violated his parole and removal proceedings had begun that the state court classified his offense as a misdemeanor for the first time. *Id*. at 842. We held that the offense was properly considered a misdemeanor for purposes of his eligibility for suspension of deportation under the INA's "petty offense" exception. *Id*. at 846; *see also* 8 U.S.C. § 1182(a)(2)(A)(ii)(II) (1996).

We distinguish *Garcia-Lopez* because in that case, the "wobbler" statute permitted a range of possible classifications for the offense at the time of conviction. Cal. Penal Code § 17(b). Here, by contrast, Petitioners were convicted of offenses that, at time of conviction, had only one possible maximum potential sentence: up to one year of imprisonment. The retroactive change to the sentence for California's misdemeanors cannot change that historical fact.

Petitioners alternatively argue that *Matter of Velasquez-Rios* conflicts with the BIA's prior decisions in *Matter of Cota-Vargas*, 23 I. & N. Dec. 849 (BIA 2015), and *Matter of Song*, 23 I. & N. Dec. 173 (BIA 2001), which discussed the effect of state court orders modifying a defendant's sentence *nunc pro tunc* to the time of conviction. Desai

separately argues that those decisions require the BIA to recognize the amendment to § 18.5 of the California Penal Code under the Full Faith and Credit Clause, as codified at 28 U.S.C. § 1738.

We see no conflict between those decisions and the BIA's decision in *Matter of Velasquez-Rios*. Here, neither Desai nor Velasquez-Rios obtained *nunc pro tunc* sentence modifications from a state court. Because those decisions are inapplicable here, Desai's Full Faith and Credit argument also fails. And even if those decisions did apply, they cannot be considered to be in tension with Petitioners' cases because they were recently overruled by the Attorney General. *Matter of Thomas & Thompson*, 27 I. & N. Dec. 674 (A.G. 2019).

Finally, Velasquez-Rios argues that California's amendment to § 18.5 is not preempted by federal law. Although the BIA did not rest its holding on a preemption analysis, we note that preemption is not at issue here, because this case presents no conflict between state and federal law. *See, e.g.*, *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009) ("For conflict preemption to apply, the conflict must be an actual conflict, not merely a hypothetical or potential conflict."). Our holding has no bearing on whether California may, for purposes of its *own* state law, retroactively reduce the maximum sentence available for misdemeanor convictions.

## IV

A final and fundamental point of import should be mentioned: our system of laws embraces the concept of federalism. Our national government has certain limited powers generally spelled out in Articles I–III of the United States Constitution. *See* U.S. Const. art. I (Legislative

Branch); art. II (Executive Branch); art. III (Judicial Branch). Any powers not covered by the grant of power to the federal government are reserved to the people or the states. *See id*. amend. X.

Historically, the states' police powers are broad in permitting state decisions that relate to public health, safety, and welfare, so long as state laws do not violate the federal Constitution. *See Chicago, B. & Q. Ry. Co. v. Illinois*, 200 U.S. 561, 584 (1906) (recognizing "the possession by each state of the power, never surrendered to the government of the Union, of guarding and promoting the public interests by reasonable police regulations that do not violate the Constitution of the state or the Constitution of the United States."). But for more than a century, it has been universally acknowledged that Congress possesses sweeping authority over immigration policy as "an incident of sovereignty." *United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1076 (9th Cir. 1998) (citation omitted). This authority derives, in part, from the federal government's powers as enumerated in the Naturalization Clause, U.S. Const. art. I, § 8, cl. 4; the Commerce Clause, *id*. § 8, cl. 3; the Migration and Importation Clause, *id*. § 9, cl. 1; as well as the federal government's "inherent power as sovereign to control and conduct relations with foreign nations." *Arizona v. United States*, 567 U.S. 387, 394–95 (2012).

From this it follows that Congress may make laws defining the proper sphere in which a person who is not a citizen and is in the United States without proper authority and documentation may be removed from this country, and that Congress, but not individual states, can give an escape hatch for removal in certain cases where equitable circumstances are thought to warrant cancellation of removal as a matter of federal law. *See Valle del Sol Inc. v.*

*Whiting*, 732 F.3d 1006, 1023 (9th Cir. 2013) ("[A]ny direct regulation of immigration—which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain—is constitutionally proscribed because the power to regulate immigration is unquestionably exclusive federal power.") (cleaned up); *see also Hernandez-Guerrero*, 147 F.3d at 1076 ("[A]ll agree that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens.") (cleaned up); *cf. Firestone v. Howerton*, 671 F.2d 317, 320 n.5 (9th Cir. 1982) ("Congress has nearly unlimited power to exclude classes of aliens from admission.").

It is clear that federal statutes can specify when removal is permissible and also when a cancellation of removal is warranted. We hold that those federal law standards cannot be altered or contradicted retroactively by state law actions, and cannot be manipulated after the fact by state laws modifying sentences that at the time of conviction permitted removal or that precluded cancellation.

## V

We hold that California's amendment to § 18.5 of the California Penal Code, which retroactively reduces the maximum misdemeanor sentence to 364 days for purposes of state law, cannot be applied retroactively for purposes of § 1227(a)(2)(A)(i).

**AFFIRMED.**