ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

February 26, 2009

The Honorable Frank J. Corte, Jr.
Chair, Committee on Defense and
    Veterans' Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0695

Re: Constitutionality of proposed legislation that would provide for the suspension or revocation of the business license of employers of undocumented aliens (RQ-0732-GA)

Dear Representative Corte:

The United States Congress has established a "comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc. v. Nat'l Labor Relations Bd.*, 535 U.S. 137, 147 (2002). Section 1324a(h)(2) of the Immigration Reform and Control Act of 1986 (the "IRCA") provides:

> The provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens.

8 U.S.C.A. § 1324a(h)(2) (West 2005). The IRCA makes it unlawful for a person or other entity "to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien." *Id.* § 1324a(1)(A). The IRCA also creates a uniform, nationwide system, known as the "I-9 Form Process," for verifying a person's work authorization status. *See* 8 C.F.R. § 274a.2(b) (2008). Under this process, an employer must complete an I-9 Form and inspect documents that establish both an applicant's identity and eligibility to work in the United States. *Id.* The IRCA specifically preempts any state or local law imposing civil or criminal sanctions upon employers of unauthorized aliens, *except* for sanctions that may be imposed by licensing and similar laws. *See* 8 U.S.C.A. § 1324a(h)(2) (West 2005).

You pose the following question: "If Texas legislation (1) provided for the suspension or revocation of the business licensure of employers of unauthorized aliens; (2) relied solely upon a federal determination of immigration status; and (3) did not impose civil or criminal sanctions, would the law be permissible under the U.S. Constitution?"[1]

---

[1]Request Letter at 2 (*available at* http://www.texasattorneygeneral.gov).

Before we consider the substantive issues you raise, we note that at least two briefs submitted to us contend that the instant request is not one that may properly be answered by the attorney general because it is "a speculative proposal without concrete language."[2] Statutory law requires the attorney general to "issue a written opinion on a question affecting the public interest or concerning the official duties of the requesting person." TEX. GOV'T CODE ANN. § 402.042(a) (Vernon 2005). The question you present here is clearly a matter "affecting the public interest." And because you are a member of the Legislature seeking guidance about potential legislation, this question indisputably relates to your official duties.

Other state legislatures and local governments have enacted legislation similar to that about which you inquire.[3] In your request, you explain that an Arizona state law (the Legal Arizona Workers Act) "prohibits an employer from intentionally or knowingly employing an unauthorized alien." Request Letter at 1; 23 ARIZ. REV. STAT. ANN. § 23-212(A) (2008). That statute (the "LAWA") requires the Arizona attorney general to "prescribe a complaint form for a person to allege a violation of subsection A." 23 ARIZ. REV. STAT. ANN. § 23-212(B) (2008). On receipt of such a complaint, either the attorney general or a county attorney is required to conduct an investigation into the facts alleged in the complaint. *See id.* In the course of that investigation, the attorney general or the county attorney must "verify the work authorization of the alleged unauthorized alien" on the basis of the I-9 Form Process heretofore described. *Id.* If the investigation reveals that the complaint is not "false and frivolous," the attorney general or county attorney is required to notify the United States immigration and customs enforcement bureau as well as a local law enforcement entity. *Id.* An action for a violation of subsection A must be brought "against the employer by the county attorney in the county where the unauthorized alien employee is or was employed." *Id.* § 23-212(D). The statute prescribes the punishment for first and second-time violations of subsection A. *Id.* § 23.212(F)(1). For a second violation, "the court shall order the appropriate agencies to permanently revoke all licenses that are held by the employer specific to the business location where the unauthorized alien performed work." *Id.* § 23-212(F)(2). The LAWA makes clear that the determination of whether a person is an unauthorized alien must be based solely on "the federal government's determination" under the I-9 Form Process. *Id.* § 23-212(H).

In *Arizona Contractors Association, Inc. v. Candelaria*, the court held that the LAWA was not preempted by federal law because it was a licensing measure that fell within the savings clause of the IRCA's preemption provisions; that it was not impliedly preempted by the IRCA; and did not, on its face, violate an employer's right to procedural due process. *Ariz. Contractors Ass'n, Inc. v. Candelaria*, 534 F. Supp. 2d 1036 (D. Ariz. 2008). The court declared that "if the [LAWA]

---

[2]*See* Brief from Luis Figueroa and Lisa Graybill, on behalf of the Mexican American Legal Defense and Educational Fund and the American Civil Liberties Union Foundation of Texas at 1 (Sept. 30, 2008) (on file with the Opinion Committee); *see also* Brief from Susan Denmon Gusky, Vinson and Elkins, on behalf of the Texas Association of Business (Oct. 3, 2008) (stating that the request "asks you to speculate regarding the constitutionality of hypothetical legislation, the provisions of which are described only in vague and very general terms") (on file with the Opinion Committee).

[3]*See infra* note 4.

constitutes a licensing or similar law, it is expressly authorized by IRCA's savings clause." *Id.* at 1045–46. Under the terms of the LAWA, "license" is defined to mean "any state or local 'authorization that is required by state or local law and that is issued . . . for the purposes of operating a business in this state.'" *Id.* at 1046 (quoting section 23-211(7)(a) of the LAWA). License includes "articles of incorporation, a certificate of partnership, a foreign corporation registration, and a transaction privilege (sales) tax license, but not a professional license." *Id.* (quoting section 23-211(7)(b)–(c) of the LAWA). The court concluded that the LAWA is "a 'licensing law' because it sets out criteria and a process to suspend or revoke a permission to do business in the state. It therefore falls within the plain meaning of IRCA's savings clause."). *Id.*

The district court's ruling in *Candelaria* was upheld by the Court of Appeals for the Ninth Circuit. That decision, *Chicanos Por La Causa, Inc. v. Napolitano*, 544 F.3d 976 (9th Cir. 2008), is currently the only federal appellate decision to consider the constitutionality of a state statute that proscribes the employment of unauthorized aliens. The courts of appeal for the Third and Eighth Circuits are currently reviewing municipal regulations regarding the same issue.[4] Because the law in this area is developing, and because we have not reviewed the details of any proposed legislation, we cannot provide certainty about the constitutionality of any proposed Texas statute. Moreover, Texas, unlike Arizona has no statewide licensing statute. On the basis of the *Candelaria* decision, however, and the Ninth Circuit Court's approval of that decision, it appears that, were the Texas Legislature to adopt a statewide licensing statute that closely tracks the Arizona statute, and were the Court of Appeals for the Fifth Circuit to follow the reasoning of its sister appellate court, such a statute would be upheld on the grounds that, as a licensing statute, it is within the exception to the IRCA and as such, is not preempted thereby. We note, however, that the Fifth Circuit Court is not bound by the decision of the Ninth Circuit Court.

---

[4]These cases have thus far reached only the level of the federal district court. *Lozano v. City of Hazleton*, 496 F. Supp. 2d 477 (M.D. Pa. 2007) (Notice of Appeal filed Aug. 23, 2007), held that a municipal ordinance prohibiting the employment of unauthorized aliens was preempted by the IRCA. *Id.* at 536–37. On the other hand, a district court in Missouri held that a local ordinance prohibiting the employment of unauthorized aliens was a "licensing law," and as such, fell within the exception to the IRCA. *Gray v. City of Valley Park*, No. 4:07CV00881 ERW, 2008 WL 294294, at *12 (E.D. Mo. Jan. 31, 2008).

## S U M M A R Y

If the Texas Legislature were to enact a statewide licensing statute that closely tracks the Legal Arizona Workers Act, and the Fifth Circuit Court of Appeals were to adopt the reasoning of the Ninth Circuit Court of Appeals, such a statute would be upheld on the grounds that, as a licensing statute, it is within the exception to the Federal Immigration Reform and Control Act of 1986.

Yours very truly,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee