FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PATTIE PAGE WALCOTT, AKA Pattie Clark, AKA Pattie Watson, *Petitioner*, | No. 18-70393 |
| v. | Agency No. A075-930-578 |
| MERRICK B. GARLAND, Attorney General, *Respondent.* | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 5, 2020
Submission Vacated January 6, 2021
Argued and Submitted February 18, 2021
San Francisco, California

Filed December 22, 2021

Before: A. Wallace Tashima, Marsha S. Berzon, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Tashima;
Concurrence by Judge Berzon;
Dissent by Judge Collins

## SUMMARY[*]

### Immigration

Granting Pattie Page Walcott's petition for review of a decision of the Board of Immigration Appeals, the panel held that Arizona Revised Statutes § 13-3405(A)(4), which prohibits certain conduct relating to marijuana, is overbroad and divisible; 2) Walcott's § 13-3505(A) convictions, which involved categories in the statute involving the smallest quantity of marijuana, were not crimes involving moral turpitude ("CIMT"); and 3) Walcott was therefore not removable.

After becoming a lawful permanent resident, Walcott was found removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two CIMTs: 1) solicitation to possess for sale less than two pounds of marijuana under §§ 13-1002, 13-3405(A)(2), and (B)(4); and 2) offering to transport less than two pounds of marijuana for sale under §§ 13-3405(A)(4) and (B)(10).

Applying the categorical approach, the panel held that subsection 13-3405(A)(4) is overbroad with respect to the generic definition of a CIMT. The panel explained that this court has held that drug trafficking crimes are generally CIMTs and that "moral turpitude" refers to conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. The panel concluded that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

subsection 13-3405(A)(4) is overbroad because it includes the offenses of importation and transfer, neither of which necessarily involves trafficking. Addressing the least egregious conduct covered by the subsection and whether there was a realistic probability that the state would apply it to conduct outside the definition of a CIMT, the panel pointed to case law where Arizona has applied the subsections involving less than two pounds of marijuana to conduct involving very small amounts.

The panel also concluded that subsection 13-3405(A)(4) is divisible because it defines multiple, separate crimes. In so concluding, the panel looked to the text of the statute, the *Shepard* documents in the record here, as well as state law.

Applying the modified categorical approach, the panel concluded that Walcott's subsection 13-3405(A)(4) conviction was not a CIMT. The panel observed that in *Barragan-Lopez v. Mukasey*, 508 F.3d 899 (9th Cir. 2007), this court held that an Arizona conviction for solicitation to possess at least four pounds of marijuana for sale constituted a CIMT. However, the panel explained that *Barragan-Lopez* expressly left open the question presented here – whether an offense involving a very small quantity of marijuana for sale is a CIMT.

The panel explained that early cases holding that drug trafficking offenses were CIMTs involved drugs that present serious risk of injury or death (such as heroin and cocaine) and observed that the legislative history on which the BIA relied in concluding that drug trafficking offenses are CIMTs emphasized the harms of narcotics. The panel concluded that the underlying rationale of the court's case law – that drug trafficking involves actual injury tantamount to murder on a

slower scale – does not apply to the sale of small amounts of marijuana. Because Walcott's offenses involved the categories in the statute involving the smallest quantity of marijuana, the panel concluded that her convictions were not CIMTs. The panel also concluded that contemporary societal attitudes toward marijuana and widespread legalization of marijuana supported its conclusion.

Concurring, Judge Berzon wrote that she continues to believe that the phrase "crime involving moral turpitude" is unconstitutionally vague. Judge Berzon concurred, however, because the opinion properly applied the existing case law.

Dissenting, Judge Collins concluded that the BIA correctly held that Walcott's convictions were CIMTs. Judge Collins wrote that it was significant that her offenses involved "sale," and wrote that the majority read too much into the court's reservation of the question in *Barragan-Lopez*. Judge Collins found persuasive the BIA's conclusion that the sharing of a small amount of marijuana would be considered morally turpitudinous if it involved sales, but not if it involved giving away a few cigarettes. Observing that this bright line coheres both with *Barragan-Lopez* and comparable judgments reflected elsewhere in federal law, Judge Collins concluded that the BIA's decision was entitled to *Skidmore* deference.

Judge Collins also wrote that the majority's reliance on legislative history, current moral standards, and decriminalization of marijuana was flawed. Finally, Judge Collins concluded that Walcott provided no other persuasive basis for setting aside her removal order.

**COUNSEL**

Altin Nanaj (argued), Nanaj Law Firm PLLC, New York, New York, for Petitioner.

Daniel E. Goldman (argued), Senior Litigation Counsel; Lindsay Corliss, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

TASHIMA, Circuit Judge:

Pattie Page Walcott, a citizen of Jamaica, became a lawful permanent resident of the United States in March 1999. In 2011, the government charged her with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude ("CIMT"), based on two Arizona convictions for marijuana-related offenses. Walcott's first conviction was in October 2010, when she entered a guilty plea to one count of solicitation to possess for sale less than two pounds of marijuana, in violation of Ariz. Rev. Stat. §§ 13-1002 (solicitation), 13-3405(A)(2) (possession for sale), and (B)(4) (less than two pounds). Shortly thereafter, she suffered her second conviction, for offering to transport less than two pounds of marijuana for sale, in violation of Ariz. Rev. Stat. § 13-3405(A)(4) (offer to transport) and (B)(10) (less than two pounds).

The Immigration Judge ("IJ") sustained the charges, found Walcott removable, and denied her application for cancellation of removal under 8 U.S.C. § 1229b(a). The

Board of Immigration Appeals ("BIA" or "Board") agreed with the IJ that Walcott's convictions were CIMTs and that she was not entitled to cancellation of removal; it thus dismissed her appeal. We conclude that Walcott's convictions are not CIMTs and that Walcott accordingly was not removable under 8 U.S.C. § 1227(a)(2)(A)(ii).

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D). *See Barrera-Lima v. Sessions*, 901 F.3d 1108, 1114 (9th Cir. 2018) (whether a crime involves moral turpitude is a legal question this court has jurisdiction to review). "We review de novo whether a particular conviction under state law is a removable offense." *Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1130 (9th Cir. 2016).

## DISCUSSION

### I

"We determine whether a conviction qualifies as a CIMT by applying the categorical approach and, if necessary, the modified categorical approach." *Vasquez-Valle v. Sessions*, 899 F.3d 834, 839 (9th Cir. 2018). "Under the categorical approach, a conviction is a crime of moral turpitude if 'the full range of conduct encompassed by the statute,' including the least egregious conduct prosecuted under the statute, is a crime of moral turpitude." *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903 (9th Cir. 2007) (quoting *Quintero-Salazar v. Keisler*, 506 F.3d 688, 692 (9th Cir. 2007)).

"The BIA has defined the term 'moral turpitude' as referring to conduct that is 'inherently base, vile, or depraved,

and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *Silva v. Garland*, 993 F.3d 705, 712 (9th Cir. 2021) (quoting *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 833 (BIA 2016)).  If the full range of conduct proscribed by the statute does not constitute a CIMT, "we apply the modified categorical approach, which permits us to look beyond the language of the statute to documents that are part of the record of conviction, but not to the particular facts underlying the conviction." *Vasquez-Valle*, 899 F.3d at 839.

## II

We focus our discussion on Walcott's second conviction, noting that the modified categorical analysis is substantially similar for her first conviction, and conclude that neither of her convictions is a CIMT.  Her second conviction was for offering to transport less than two pounds of marijuana for sale, in violation of Ariz. Rev. Stat. § 13-3405(A)(4) and (B)(10).  The BIA concluded that the conviction was a CIMT, relying on the general principle that drug trafficking offenses are CIMTs and citing its decision in *Matter of Khourn*, 21 I. & N. Dec. 1041 (BIA 1997).  Although we generally apply *Chevron*[1] deference where the BIA relies on its own precedential decision, "[w]e have hesitated to defer to the BIA's general understanding of the term 'moral turpitude' because the BIA's 'general definition of moral turpitude fails to particularize the term in any meaningful way.'" *Betansos v. Barr*, 928 F.3d 1133, 1139 (9th Cir. 2019) (quoting *Marmolejo-Campos v. Holder*, 558 F.3d 903, 910 (9th Cir. 2009) (en banc)).  *Khourn* involved a conviction for

---

[1] *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

distribution of cocaine under 21 U.S.C. § 841 and does not establish that Walcott's state conviction for offering to transport less than two pounds of marijuana is a CIMT. We therefore decline to apply *Chevron* deference to the BIA's reliance on *Khourn* in this case.

The Board also relied on our decision in *Barragan-Lopez*, where we held that the petitioner's conviction for solicitation to possess at least four pounds of marijuana for sale, in violation of subsections 13-3405(A)(2) and (B)(6), constituted a CIMT for purposes of removability under 8 U.S.C. § 1227(a)(2)(A)(i).[2] *Barragan-Lopez*, 508 F.3d at 904. As pertinent here, the *Barragan-Lopez* court reasoned that "[d]rug trafficking offenses, including possession of unlawful substances for sale, generally involve moral turpitude. The quantity inherent in Barragan[-]Lopez's conviction – four pounds of marijuana – was too great to justify treating this crime differently." *Id.* at 903–04. We thus concluded that the petitioner's conviction was a CIMT. *Id.* at 904; *see also Romo v. Barr*, 933 F.3d 1191, 1196–99 (9th Cir. 2019) (relying on *Barragan-Lopez* to hold that an Arizona conviction for solicitation to possess for sale at least four pounds of marijuana was a CIMT for purposes of inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(I)). We stated, however, that we did not "address the question that would be presented if Barragan-Lopez had been convicted of

---

[2] The issue in *Barragan-Lopez* was whether the court should focus on the solicitation offense rather than the underlying crime in determining whether the prior conviction was a CIMT. Reasoning that "[w]e have previously looked to underlying crimes in determining whether convictions for inchoate offenses constitute crimes involving moral turpitude," the court looked to the underlying possession offense to determine if the conviction was a CIMT. *Barragan-Lopez*, 508 F.3d at 903.

solicitation to possess a very small quantity of marijuana for sale, such as, for example, a single marijuana cigarette at a party with personal friends." *Barragan-Lopez*, 508 F.3d at 904.

*Barragan-Lopez* does not control as to Walcott's second conviction because it involved a different subsection of the statute, and "[w]e look at the specific subsections of a statute that the petitioner is convicted under to determine if it is a crime of moral turpitude." *Id.* at 903. Barragan-Lopez's conviction (and Walcott's first conviction) was under subsection 13-3405(A)(2), which prohibits only possession of marijuana for sale. Walcott's second conviction was under subsection 13-3405(A)(4), which provides that a person shall not knowingly "[t]ransport for sale, import into this state or offer to transport for sale or import into this state, sell, transfer or offer to sell or transfer marijuana."

In contrast to subsection (A)(2), which prohibits only one offense, subsection (A)(4) includes two offenses that do not necessarily involve trafficking of marijuana – importation and transfer. Importation could be accomplished by driving into the State of Arizona with a small amount of marijuana in the car that is for personal use, not for sale. *See State v. Farid*, 471 P.3d 668, 669 (Ariz. Ct. App. 2020) (holding that a conviction under subsection 13-3405(A)(4) for importation "does not require proof a defendant who knowingly imported marijuana did so 'for sale'"); *State v. Chabolla-Hinojosa*, 965 P.2d 94, 98 (Ariz. Ct. App. 1998) (discussing subsection 13-3405(A)(4) and noting that "an importation charge has no 'for sale' element"). Similarly, transfer could be accomplished by someone sharing marijuana with a friend without being paid. *See State v. Cota*, 956 P.2d 507, 507, 508–09 (Ariz. 1998) (en banc) (observing that "transfer" in

subsection 13-3405(A)(4) is defined "to mean 'furnish, deliver *or give away*'") (emphasis added). Subsection 13-3405(A)(4) accordingly is overbroad because it "criminalizes conduct that goes beyond the elements" of the CIMT of drug trafficking. *Almanza-Arenas v. Lynch*, 815 F.3d 469, 476 (9th Cir. 2016) (en banc) (quoting *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015)).

In addition, to determine overbreath, we consider the "least egregious conduct" covered by the statute. *Baragan-Lopez*, 508 F.3d at 903. Here that offense is transportation or transfer, without sale, of a very small amount of marijuana. "To show that the stated offense is broader than the generic definition of a CIMT and thus not a categorical match, the petitioner must demonstrate that there is 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of moral turpitude.'" *Vasquez-Valle*, 899 F.3d at 839 (quoting *Turijan v. Holder*, 744 F.3d 617, 620 (9th Cir. 2014))). In *Cota*, the defendant was charged under subsection 13-3405(A)(4) after he was seen purchasing "a small amount of marijuana, the equivalent of two to three cigarettes," 956 P.2d at 508. Arizona therefore has applied the subsections of the statute involving "less than two pounds" of marijuana, under which Walcott was charged, to conduct involving very small amounts.[3] For the reasons discussed in Part IV, *infra*, such conduct is not "inherently base, vile, or depraved, and contrary to the accepted rule of

---

[3] The Arizona Supreme Court reversed Cota's conviction because the prosecution's theory was that Cota was liable as an accomplice in transferring marijuana to himself, but "a transferee cannot transfer to himself or herself." *Cota*, 956 P.2d at 508.

morality and the duties owed between persons or to society in general." *Silva*, 993 F.3d at 712.

## III

Because subsection 13-3405(A)(4) is overbroad, we must move to the next step and determine whether it is divisible or indivisible. *Barbosa v. Barr*, 926 F.3d 1053, 1057 (9th Cir. 2019). If the statute is indivisible, "'our inquiry ends, because a conviction under an indivisible, overbroad statute can never serve as a predicate offense.'" *Id.* (quoting *Almanza-Arenas*, 815 F.3d at 475). If it is divisible, we proceed to the modified categorical approach. *Id.*; *accord Ibanez-Beltran v. Lynch*, 858 F.3d 294, 297 (5th Cir. 2017) (per curiam) ("Courts may only use the modified approach . . . when the statute of conviction is divisible.").

In determining whether a statute is divisible, the question is whether the listed items are alternative elements or if they are "various factual means of committing a single element." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). If the elements "are alternative to each other – not the mode or means of proving an element of the crime – the statute is divisible." *Almanza-Arenas*, 815 F.3d at 477. We conclude that subsection 13-3405(A)(4) is divisible.

The first step in determining divisibility is to examine the text of the statute. *Id.* Subsection (A)(4) provides that a person shall not knowingly "[t]ransport for sale, import into this state or offer to transport for sale or import into this state, sell, transfer or offer to sell or transfer marijuana." Because the subsection "list[s] elements in the alternative," the phrasing of the statute suggests that it "define[s] multiple crimes" and thus is divisible. *Mathis*, 136 S. Ct. at 2249; *see*

*Gomez Fernandez v. Barr*, 969 F.3d 1077, 1089 (9th Cir. 2020) (explaining that disjunctive text "'alone cannot end the divisibility inquiry,'" but it "suggests" the statute lists different crimes and thus is divisible (quoting *Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir. 2014))).

We also examine "*Shepard* documents to see whether the statute displays alternative elements instead of alternative means of committing the same crime." *Almanza-Arenas*, 815 F.3d at 478; *see Mathis*, 136 S. Ct. at 2249 (explaining that, under *Shepard v. United States*, 544 U.S. 13 (2005), the court may examine "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)"). Walcott pled guilty to count 2 of a five-count indictment, charging her with transportation of marijuana for sale.[4] The plea agreement stated that Walcott "unlawfully offered to transport marijuana for sale, having a weight of less than two pounds." The indictment and plea agreement's use of "one alternative term to the exclusion of all others" in the statute "indicates that the terms within the statute are individual elements." *Ibanez-Beltran*, 858 F.3d at 298; *see Mathis*, 136 S. Ct. at 2257 ("[A]n indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime."); *Almanza-Arenas*, 815 F.3d at 479 ("[A] prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of

---

[4] The other four counts in the indictment were: count 1, conspiracy to commit transportation of marijuana for sale and/or possession of marijuana for sale; counts 3 and 4, possession of drug paraphernalia; and count 5, possession of less than two pounds of marijuana.

alternatives." (quoting *Descamps v. United States*, 570 U.S. 254, 272 (2013))).

We also look to state law to determine whether the statute is divisible. *Almanza-Arenas*, 815 F.3d at 480. Arizona law suggests that subsection 13-3405(A)(4) lists alternative offenses. For example, in *Chabolla-Hinojosa*, 965 P.2d 94, the defendant's conviction on one count each of transporting marijuana for sale and importing marijuana indicates that those are separate offenses listed in subsection 13-3405(A)(4). The charges in *Farid*, 471 P.3d 668 (importation of marijuana), and *State v. Fierro*, 206 P.3d 786 (Ariz. Ct. App. 2008) (transportation of marijuana for sale), similarly suggest that the offenses listed in subsection 13-3405(A)(4) are separate offenses and that the statute accordingly is divisible.

*Farid*'s holding further supports the conclusion that the statute is divisible. The court there held that a conviction under subsection 13-3405(A)(4) for importing marijuana does not require proof the defendant imported it for sale. *Farid*, 471 P.3d at 672. This distinction indicates that the statute is divisible because "transport for sale" and "import into this state" have different elements and thus are different offenses.

Walcott relies on *State v. Brown*, 177 P.3d 878 (Ariz. Ct. App. 2008) to argue that section 13-3405 is not divisible at all, but *Brown* does not support her position. The defendant in *Brown* was convicted under Ariz. Rev. Stat. § 13-3408(A)(7) of three counts each of sale and transfer of a

narcotic drug, based on three separate sales of crack cocaine.[5]
The question was whether the "sell, transfer or offer to sell or
transfer" phrase in subsection 13-3408(A)(7) "represent[ed]
different ways to commit a single crime or rather . . .
create[d] separate offenses when a single transaction is
involved." *Id.* at 881.  Observing that the heading of the
statute included sale of narcotic drugs, but not transfer or
offer to sell or transfer, and assuming that "the legislature
intended to create no more offenses than those listed in the
heading of the statute," the court concluded that "the
legislature intended the terms 'sale' and 'transfer' to
represent different ways of committing the same offense
when a single transaction is involved. *Id.* at 881–82.

Although *Brown* concluded that sale and transfer
represented different ways of committing the same offense,
the court noted that sale and transportation do not. *Id.* at 882
n.3.  *Brown* thus acknowledged that at least two of the
offenses listed in subsection 13-3408(A)(7) are not the same
offense.  The case therefore does not establish that subsection
13-3405(A)(4), whose language is nearly identical to
subsection 13-3408(A)(7), is entirely indivisible.

The structure of the subsection, the indictment, and
Walcott's plea agreement all indicate that subsection (A)(4)
is divisible with regard to the transportation offense with
which Walcott was charged.  The holding of *Farid* and the
charges in *Chabolla-Hinojosa*, *Farid*, and *Fierro* further
support our conclusion that the statute is divisible in that
regard.  *Accord Ibanez-Beltran*, 858 F.3d at 298 (concluding

---

[5] Subsection 13-3408(A)(7) proscribes "[t]ransport for sale, import
into this state, offer to transport for sale or import into this state, sell,
transfer or offer to sell or transfer a narcotic drug."

that "[t]he plea agreement, judgment, and instructions are enough, without settled state law to the contrary, to hold that section 13-3405(A)(4) is divisible"). We therefore turn to the modified categorical approach.

## IV

In applying the modified categorical approach, we "'review . . . record materials' to determine which of the offenses in a divisible statute the defendant was convicted of committing." *Pereida v. Wilkinson*, 141 S. Ct. 754, 764 (2021) (alteration in original) (quoting *Mathis*, 136 S. Ct. at 2256). We know that the record of conviction establishes that Walcott was convicted of offering to transport less than two pounds of marijuana for sale and that transport for sale generally constitutes drug trafficking. However, as *Barragan-Lopez* recognized, a drug trafficking offense involving a small amount of marijuana might not involve moral turpitude. The conviction in *Barragan-Lopez* involved more than four pounds of marijuana, the category in the statute for the largest quantity, and the court specifically relied on the large quantity to conclude the offense was a CIMT. *Barragan-Lopez*, 508 F.3d at 904; *see* § 13-3405(B)(6).[6] By contrast, Walcott's conviction involved the category in the statute addressing the smallest quantity of marijuana, less than two pounds.[7] *See* § 13-3405(B)(10). As

---

[6] The statute categorizes offenses into different classes of felony according to the weight of marijuana – less than two pounds, at least two pounds but not more than four pounds, and more than four pounds. *See* § 13-3405(B). Within each category, there is no distinction as to the amount of marijuana, so the categories are not internally divisible. *See id.*

[7] Walcott's first conviction similarly involved the category in the statute addressing the smallest quantity of marijuana, § 13-3405(B)(4).

*Cota* indicates, the least culpable conduct prosecuted in that category could involve an amount of marijuana equivalent to only "two or three cigarettes." *Cota*, 956 P.2d at 508. This case thus presents the question left open in *Barragan-Lopez* – whether an offense involving "a very small quantity of marijuana for sale" is a CIMT. *Id.* We conclude that Walcott's convictions are not CIMTs.[8]

"'Although the immigration statutes do not specifically define offenses constituting crimes involving moral turpitude, a crime involving moral turpitude is generally a crime that (1) is vile, base, or depraved and (2) violates accepted moral standards.'" *Ceron v. Holder*, 747 F.3d 773, 779 (9th Cir. 2014) (en banc) (quoting *Latter-Singh v. Holder*, 668 F.3d 1156, 1161 (9th Cir.2012)). We have described CIMTs as offenses that "offend society's most fundamental values, or shock society's conscience," *Barbosa*, 926 F.3d at 1058 (quoting *Mendoza v. Holder*, 623 F.3d 1299, 1302 (9th Cir. 2010)), and have observed that "non-fraudulent [CIMTs] 'almost always' involve the intent to injure, actual injury, or a protected class of victims." *Turijan*, 744 F.3d at 619 (quoting *Nunez v. Holder*, 594 F.3d 1124, 1131 (9th Cir. 2010)).

We have also held that "drug trafficking crimes are generally crimes involving moral turpitude." *Romo*, 933 F.3d at 1195. The history of that precept is informative here.

---

[8] It is unclear what the dissent means by characterizing our resolution of this open question as "read[ing] that comment as a negative pregnant." Dissent at 27. Contrary to the dissent's assertion, Dissent at 27, *Barragan-Lopez*'s explicit reliance on the large quantity at issue and its reservation of the question when a small quantity is at issue are properly characterized as suggesting that an offense involving a small quantity may not be a CIMT.

Early cases holding that drug trafficking offenses were CIMTs involved drugs such as heroin and cocaine – that is, drugs that did present serious risk of injury or death. *Atlantic Richfield Co. v. Guerami*, 820 F.2d 280 (9th Cir. 1987), for example, held that possession of heroin for sale is a "crime of moral turpitude," *id*. at 282, citing *United States ex el. DeLuca v. O'Rourke*, 213 F.2d 759 (8th Cir. 1954), which explained that "there can be nothing more depraved or morally indefensible than conscious participation in the illicit drug traffic. The evils which result from unlawfully importing or dealing with unlawfully imported narcotic drugs are a matter of common knowledge," *id.* at 762. "[N]arcotic drugs" were defined under the then-applicable statute as opium, coca leaves, cocaine, or any salt, derivative, or preparation of opium, coca leaves, or cocaine." 21 U.S.C. § 171(a) (1940).

In *Khourn*, the BIA similarly held in 1997 that a conviction for distribution of cocaine under 21 U.S.C. § 841(a)(1) was a CIMT, relying in part on the legislative history of the Narcotic Control Act of 1956. 21 I. & N. Dec. at 1046, 1048–49. When Congress added a subsection to that Act addressing the smuggling of marijuana, the House Report noted that "[t]here are few criminal acts that are more reprehensible than the act of abetting drug addiction by engaging in the illicit narcotic and marihuana traffic." H.R. Rep. No. 84-2388 (1956), *as reprinted in* 1956 U.S.C.C.A.N. 3274, 3285. But the report as a whole emphasized the harms of narcotics, explaining that "[t]he narcotic traffic has been aptly described as 'murder on the installment plan.'" *Id.* at 3304. We have determined that trafficking of over four pounds of marijuana is a CIMT, *Barragan-Lopez*, 508 F.3d at 904, but the underlying rationale of our case law – that drug trafficking involves actual injury tantamount to murder

on a slower scale – does not apply to the sale of small amounts of marijuana. *See* Drug Enforcement Administration, *Drug Fact Sheet: Marijuana/Cannabis* 3 (2020), https://www.dea.gov/sites/default/files/2020-06/Marijuana-Cannabis-2020.pdf (noting that "'[n]o deaths from overdose of marijuana have been reported'").

*Barragan-Lopez* so acknowledged when it suggested that possession of a small amount of marijuana for sale might not be morally turpitudinous. Because Walcott's offenses involved the categories in the statute involving the smallest quantity of marijuana, we conclude that her convictions are not CIMTs. Contemporary societal attitudes toward marijuana support the conclusion that offering to transport for sale and solicitation to possess for sale very small amounts of marijuana are not offenses that are so inherently base, vile, or depraved that they offend society's most fundamental values or shock society's conscience.

In November 2020, Arizona voters passed Proposition 207, which provides, in part, that it is lawful to possess or purchase one ounce or less of marijuana, effective November 30, 2020.[9] Ariz. Rev. Stat. § 36-2852(A)(1). In doing so, Arizona joined fifteen other states and the District of Columbia in legalizing the recreational use of marijuana. *See*

---

[9] Arizona passed the Arizona Medical Marijuana Act in 2010, permitting the use of medical marijuana, effective December 14, 2010. *See* Ariz. Rev. Stat. § 36-2802; *State v. Jones*, 440 P.3d 1139, 1141 (Ariz. 2019). Thus, at the time of Walcott's conviction, Arizona permitted those who met the statutory conditions to use medical marijuana and regulated medical marijuana dispensaries and third party laboratories who dispensed the marijuana. *See* Ariz Rev. Stat. §§ 36-2801 to 36-2810. However, "marijuana possession and use [were] otherwise illegal in Arizona." *Reed-Kaliher v. Hoggatt*, 347 P.3d 136, 139 (Ariz. 2015).

Michael Hartman, Nat'l Conf. of State Legislators, *Cannabis Overview* (Apr. 8, 2021), https://www.ncsl.org/research/civ il-and-criminal-justice/marijuana-overview.aspx (explaining that, as of April 8, 2021, "[s]eventeen states, two territories, and the District of Columbia have legalized the possession of small amounts of cannabis (marijuana) for adult recreational use"); *see also* Gary Michael Smith, *Licensing, Zoning and Recreational Cannabis' Post-Election Obstacles*, 57 Ariz. Att'y 28 (Mar. 2021) ("Passage of Proposition 207 makes Arizona the 13th state to enact an adult-use marijuana law."). As one article posited, "[i]n less than a decade, marijuana legalization has gone from unthinkable to seemingly unstoppable." Douglas A. Berman & Alex Kreit, *Ensuring Marijuana Reform Is Effective Criminal Justice Reform*, 52 Ariz. St. L.J. 741, 741 (2020). Berman and Kreit explained that "[s]ixty-seven percent of Americans favor legalizing marijuana according to a late-2019 Pew Research Center survey – up from 32% in 2006." *Id.* at 741–42 (footnote omitted); *see also* Daniel Tilleman, *Canada Shows the United States How to Do Marijuana at the Federal Level: A Comparison and Suggestion for A Federal Medical Marijuana Law*, 38 Ariz. J. Int'l & Comp. L. 111, 113 (2021) ("In 1990, some studies found that only 16.4% of Americans supported the legalization of marijuana in the US. Recent studies are now showing that the percentage has climbed to over sixty percent." (footnote omitted)).[10]

---

[10] The dissent characterizes our reliance on these source materials as "subjective moral intuitions derived from our reading of polling data and law review commentary." Dissent at 32. These data, however, objectively show society's changing moral standards regarding the possession and use of marijuana and the dissent does not challenge their accuracy.

The widespread legalization of marijuana makes it clear that offering to transport for sale a very small amount of marijuana does not involve conduct that violates accepted moral standards.[11]   As we have explained, "'[o]nly truly unconscionable conduct surpasses the threshold of moral turpitude.'"  *Turijan*, 744 F.3d at 621 (alteration in original) (quoting *Robles-Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir.2012)).

The need to consider current moral standards in determining whether an offense is morally turpitudinous is illustrated by *Chavez-Alvarez v. Attorney General U.S.*, 850 F.3d 583 (3d Cir. 2017), in which the Third Circuit held that a 2000 conviction for sodomy was not a CIMT in light of the Supreme Court's 2003 decision in *Lawrence v. Texas*, 539 U.S. 558 (2003).  Nearly a decade after the petitioner in *Chavez-Alvarez* was convicted of violating three sections of the Uniform Code of Military Justice, including for sodomy, he was charged with removability for having been convicted of an aggravated felony and two or more CIMTs.   The petitioner challenged his removal, arguing that "he was only convicted of sodomy, a constitutionally protected activity" under *Lawrence. Chavez-Alvarez*, 850 F.3d at 585.  The BIA rejected his argument on the ground that his offense was committed forcibly, making it subject to a sentence enhancement that rendered it the "functional equivalent" of a conviction for forcible sodomy, a CIMT.  The Third Circuit

---

[11] The same reasoning applies to Walcott's first conviction, for solicitation to possess for sale less than two pounds of marijuana. Although this conviction came under the same subsection of the statute as was addressed in *Barragan-Lopez*, her offense presents the question left open there – whether a conviction under § 13-3405(A)(2) for a very small quantity of marijuana is a CIMT.  We conclude that it is not.

reversed the BIA and granted the petition, reasoning that the sentence enhancement was not an element of the offense. *Id.* at 587–90. As pertinent here, the court concluded that sodomy was not a CIMT because, "[p]er *Lawrence v. Texas*, the 'crime' in the Code affecting Chavez-Alvarez does not withstand constitutional scrutiny." *Id.* at 590.

Although *Chavez-Alvarez* did not address the question we face, the determination whether sodomy was morally turpitudinous was viewed through the lens of *Lawrence v. Texas*, which was decided three years after the petitioner's conviction. As the Supreme Court has explained, the drafters of the Constitution "knew times can blind us to certain truths and later generations can see that laws once thought necessary and proper in fact serve only to oppress." *Lawrence*, 539 U.S. at 579.

We acknowledge that, in the context of assessing an aggravated felony, we have held that "when conducting a categorical analysis for removability based upon a state criminal conviction, it is proper to compare drug schedules at the time of the petitioner's underlying criminal offense, not at the time of the petitioner's removal." *Medina-Rodriguez v. Barr*, 979 F.3d 738, 742 (9th Cir. 2020). Similarly, we have held that in determining whether a CIMT is "a crime for which a sentence of one year or longer may be imposed," 8 U.S.C. § 1227(a)(2)(A)(i), we consider the maximum sentence at the time of conviction. *Velasquez-Rios v. Wilkinson*, 988 F.3d 1081, 1084–89 (9th Cir. 2021).

The determination of whether an offense is morally turpitudinous, however, is not based on a discrete, objective, concrete factor, such as a drug schedule or the statutory

maximum prison time.        Instead,   as   the   BIA   has
acknowledged,

> Both the courts and this Board have referred
> to moral turpitude as a nebulous concept with
> ample room for differing definitions of the
> term.   Under this standard, the nature of a
> crime is measured against *contemporary
> moral standards* and may be susceptible to
> change based on the prevailing views in
> society.

*Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1258 (9th Cir. 2019)
(W. Fletcher, J., concurring) (emphasis added) (cleaned up)
(quoting *In re Lopez-Meza*, 22 I. & N. Dec. 1188, 1191 (BIA
1999)), *cert. denied*, 140 S. Ct. 2704 (2020); *cf. In re Barug*,
76 F. Supp. 407, 409 (N.D. Cal. 1948) (explaining that "[t]he
term 'good moral character' in the Nationality Act is not a
term of technical legal connotation," but instead "must be
viewed in the light of the standards of society," and that "the
morals of the community" are not "static"); *In the Matter of
G-*, 1 I. & N. Dec. 59, 60 (BIA 1941) (in determining whether
an offense is a CIMT, the standard "is that prevailing in the
United States as a whole, regarding the common view of our
people concerning its moral character"). A determination that
an offense is base, vile, or depraved, or contrary to accepted
moral standards depends on the accepted moral standards or
prevailing views at the time.   Thus, a removal order for
having committed a CIMT is fundamentally different from
basing removal on a drug schedule or maximum sentence in
force at the time of conviction and should not be based on an
offense previously, but no longer, thought to be turpitudinous
under societal standards.

For example, could a removal order be enforced on the basis of a conviction under antimiscegenation laws obtained prior to *Loving v. Virginia*, 388 U.S. 1 (1967)? As Judge Norris observed, "the Virginia legislature may have adopted this law in the sincere belief that miscegenation – the mixing of racial blood lines – was evil." *Watkins v. U.S. Army*, 875 F.2d 699, 730 (9th Cir. 1989) (en banc) (Norris, J., concurring in the judgment); *cf. Barug*, 76 F. Supp. at 409–10 (rejecting the government's argument that the petitioner lacked good moral character based on his marriage, which was invalid because it violated miscegenation law). Because society's moral judgments change over time, the determination whether an immigrant is removable for having committed a CIMT should be viewed in light of contemporary moral standards, as in *Chavez-Alvarez*.

We conclude that Walcott's marijuana convictions are not CIMTs. She therefore is not removable for having been convicted of two CIMTs under 8 U.S.C. § 1227(a)(2)(A)(ii).[12]

The petition for review is **GRANTED.**

---

[12] In light of our holding that Walcott is not removable, we need not address the numerous other contentions she raises.

BERZON, Circuit Judge, concurring:

I continue to believe that the phrase "crime involving moral turpitude" ("CIMT") is unconstitutionally vague. *See Silva v. Garland*, 993 F.3d 705, 719–20 (9th Cir. 2021) (Berzon, J., concurring) (as amended); *Jauregui-Cardenas v. Barr*, 946 F.3d 1116, 1121 (9th Cir. 2020) (Berzon, J., concurring); *Barbosa v. Barr*, 926 F.3d 1053, 1060–61 (9th Cir. 2019) (Berzon, J., concurring); *see also Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1251–61 (9th Cir. 2019) (W. Fletcher, J., concurring); *Marmolejo-Campos v. Holder*, 558 F.3d 903, 921–22 (9th Cir. 2009) (en banc) (Berzon, J., dissenting). I concur in Judge Tashima's opinion, however, as it properly applies the existing case law concerning the CIMT concept to the crime of conviction in this case.

---

COLLINS, Circuit Judge, dissenting:

In my view, the Board of Immigration Appeals ("BIA") correctly held that Petitioner Pattie Walcott's two marijuana-trafficking convictions were crimes involving moral turpitude and that she was therefore removable under § 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"). I therefore dissent from the majority's contrary conclusion. And because Walcott has raised no other persuasive basis for setting aside the BIA's decision, I would deny her petition for review.

## I

In October 2010, Walcott was sentenced by an Arizona state court to two years of probation after her plea of guilty to a single count of "solicitation of possession of marijuana for

sale, having a weight of less than two pounds" in violation of Arizona Revised Statutes §§ 13-1002 and 13-3405(A)(2), (B)(4) (2009 ed.). In April 2011, Walcott was again sentenced by an Arizona state court, this time to three years in prison after she pleaded guilty to a single charge of "offer to transport marijuana for sale" in violation of Arizona Revised Statutes § 13-3405(A)(4), (B)(10) (2011 ed.). The BIA concluded that these two convictions were for crimes involving moral turpitude, which rendered Walcott removable under INA § 237(a)(2)(A)(ii). *See* 8 U.S.C. § 1227(a)(2)(A)(ii) (stating that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct," is removable).

In reviewing this decision, I agree with the majority that we must apply the categorical approach, under which a particular offense of conviction is a "crime involving moral turpitude" only if "'the full range of conduct encompassed by the statute,' including the least egregious conduct prosecuted under the statute, is a crime of moral turpitude." *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903 (9th Cir. 2007) (citation omitted); *see also* Opin. at 6. I also agree that, as to Walcott's first offense of conviction, the focus of analysis under the categorical approach is on the underlying offense solicited—*viz.*, Arizona Revised Statutes § 13-3405(A)(2) (criminalizing "possess[ing] marijuana for sale")—and not the generic offense of solicitation. *See Gonzalez Romo v. Barr*, 933 F.3d 1191, 1196–97 (9th Cir. 2019); *Barragan-Lopez*, 508 F.3d at 903; *see also* Opin. at 8 n.2. I further agree that Arizona Revised Statutes § 13-3405(A)(4)—the statute underlying Walcott's second conviction—is a divisible statute, and that the offense of "offer to transport for sale . . . marijuana" that is described in one clause of that

subsection is a distinct offense from those set forth in the other clauses contained in that subsection. *See* Opin. at 11–15. Under the so-called "modified categorical approach," our analysis of § 13-3405(A)(4) is therefore properly limited only to that clause.[1] Accordingly, the question here is whether the offenses of (1) possessing less than two pounds of marijuana "for sale"; and (2) offering to transport less than two pounds of marijuana "for sale" are both categorically crimes involving moral turpitude.

In addressing that question, I note that the resulting offenses at issue here are categorically limited to situations involving possession or transportation of marijuana "for sale." *See* ARIZ. REV. STAT. § 13-3405(A)(2), (A)(4). That point is significant, because it is well established that "drug *trafficking* crimes are generally crimes involving moral turpitude." *Gonzalez Romo*, 933 F.3d at 1195 (emphasis added); *Barragan-Lopez*, 508 F.3d at 903–04 ("Drug trafficking offenses, including possession of unlawful substances *for sale*, generally involve moral turpitude.") (emphasis added); *see also*, *e.g.*, *Ferraz Mota v. Barr*, 971 F.3d 96, 100 (2d Cir. 2020) ("[W]e, as well as numerous other courts, have acknowledged the reprehensible conduct inherent in drug trafficking offenses, and, as a result, courts

---

[1] Because it is so clear that this clause describes a separate offense, it seems to me pointless to take any position on the broader question of whether § 13-3405(A)(4) *as a whole* is a categorical match to a crime of moral turpitude. *Cf.* Opin. at 9–11. If the answer to that question is yes, then Walcott's conviction is a crime involving moral turpitude. But if the answer is no, then we would simply proceed to examine whether the separate clause at issue in this case is a categorical match. Because that latter question is thus dispositive here, I express no view as to whether the majority is correct in concluding that the broader statute is not a categorical match.

have concluded that such offenses involve moral turpitude." (citation omitted)); *United States ex rel. De Luca v. O'Rourke*, 213 F.2d 759, 762 (8th Cir. 1954) ("[T]here can be nothing more depraved or morally indefensible than conscious participation in the illicit drug traffic."). Indeed, prior to Walcott's offenses, we had squarely held that possession of more than four pounds of marijuana for sale in violation of Arizona Revised Statutes § 13-3405(A)(2), (B)(6) is categorically a crime involving moral turpitude. *See Barragan-Lopez*, 508 F.3d at 903–04. And, at the time of Walcott's convictions, the leading precedential BIA decision similarly recognized that "both Federal and State courts concur that participation in illicit drug trafficking is a crime involving moral turpitude." *In re Khourn*, 21 I. & N. Dec. 1041, 1046–47 (BIA 1997).

The BIA concluded that Walcott's marijuana-sales-related offenses fell within this general rule. The majority notes, however, that the court in *Barragan-Lopez* stated that, because the offense there involved more than four pounds of marijuana, the court had no occasion to "address the question that would be presented if Barragan-Lopez had been convicted of solicitation to possess a very small quantity of marijuana for sale, such as, for example, a single marijuana cigarette at a party with personal friends." 508 F.3d at 904; *see also* Opin. at 8–9. Although *Barragan-Lopez* thus left that point as an open question, the majority instead reads that comment as a negative pregnant that affirmatively "suggested that possession of a small amount of marijuana for sale might not be morally turpitudinous." *See* Opin. at 18. But nothing in *Barragan-Lopez* hinted at an answer to the reserved question, and the majority "reads too much into the [c]ourt's reservation of a question that was not before it." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 218 n.3 (2008).

The BIA recognized that this case presents the question reserved in *Barragan-Lopez*, and the BIA therefore expressly addressed whether it made a difference that Walcott's marijuana trafficking offenses involved less than two pounds rather than, as in *Barragan-Lopez*, more than four pounds. The BIA concluded that, "given the statute's remuneration requirement," the covered illicit trafficking of small amounts of marijuana *for money* still qualified as "turpitudinous" and distinguished it from a trafficking offense that involved only "casual sharing of a marijuana cigarette among friends" for no money. Thus, the BIA concluded that the sort of sharing among friends posited in *Barragan-Lopez* would be considered morally turpitudinous if it involves *sales*, but not if it involved giving away a few cigarettes for free.

That reasoning seems to me to be sound, and the bright line it draws notably does not contradict any of the analogous (and in some cases, stricter) lines drawn elsewhere by the INA and by the Controlled Substances Act. *See* 8 U.S.C. § 1182(h) (stating that the inadmissibility of an alien for having committed a crime of moral turpitude may be waived if "it relates to a single offense of *simple possession* of 30 grams or less of marijuana") (emphasis added); *id.* § 1227(a)(2)(B)(i) (separate rule rendering deportable any alien convicted of an offense "relating to a controlled substance" does not apply to "a single offense involving possession for one's own use of 30 grams or less of marijuana"); 21 U.S.C. § 841(b)(4) (providing that trafficking in marijuana shall be "treated" as simple possession under 21 U.S.C. § 844 if the offense consisted of "distributing a small amount of marihuana *for no remuneration*" (emphasis added)). While the BIA's decision here is entitled only to *Skidmore* deference and not to *Chevron* deference, *see Barrera-Lima v. Sessions*, 901 F.3d 1108, 1114–15 (9th Cir.

2018), it seems to me persuasive. I therefore agree with the BIA that Walcott's two offenses were crimes involving moral turpitude, and she was properly found to be removable under INA § 237(a)(2)(A)(ii).

## II

The majority nonetheless holds that illicit small-scale retail sales of marijuana are not morally turpitudinous. *See* Opin. at 16–22. The majority's reasons for reaching this conclusion are all flawed.

## A

The majority first invokes an irrelevant snippet of 60-year-old legislative history to substantially narrow the rationale for treating drug trafficking as a crime involving moral turpitude. *See* Opin. at 17. Specifically, the majority notes that, in a 1997 precedential decision concluding that cocaine trafficking was a crime involving moral turpitude, the BIA at one point cited a 1956 House committee report in which the committee members opined that "'[t]here are few criminal acts that are more reprehensible than the act of abetting drug addiction by engaging in the illicit narcotic and marihuana traffic.'" *Khourn*, 21 I. & N. Dec. at 1047 (quoting H.R. REP. NO. 84-2388 (1956), *reprinted in* 1956 U.S.C.C.A.N. 3274, 3285). That BIA decision also noted that the same report stated that "[n]arcotics trafficking was also described as 'murder on the installment plan.'" *Id*. (quoting 1956 U.S.C.C.A.N. at 3304 (further quotation marks omitted)). Seizing on this second quotation, the majority declares that the "underlying rationale" for treating drug trafficking as a crime of moral turpitude in our caselaw is that "drug trafficking involves actual injury tantamount to murder

on a slower scale." *See* Opin. at 17–18. That rationale "does not apply to the sale of small amounts of marijuana," the majority concludes, because statistics from the Drug Enforcement Administration ("DEA") show that "[n]o deaths from overdose of marijuana have been reported." *Id*. (quoting *DEA Drug Fact Sheet: Marijuana/Cannabis* at 3, available at https://www.dea.gov/sites/default/files/2020-06/Marijuana-Cannabis-2020_0.pdf).

The obvious problem with this reasoning is that it proves too much: under this rationale, *Barragan-Lopez* was wrongly decided. If the majority is right that overdose deaths are the linchpin of moral turpitude, then *any* trafficking in marijuana—whether more than four pounds or less than two pounds—cannot be deemed morally turpitudinous. The majority's narrow reconceptualization of what makes drug trafficking morally turpitudinous thus cannot provide a coherent basis for drawing a line between small-scale retailers on the one hand and large-scale retailers and wholesalers on the other. Because the majority's view is logically irreconcilable with *Barragan-Lopez*, it cannot be correct.

**B**

The majority alternatively concludes that the moral turpitude of an offense must be evaluated under "*current* moral standards" and that, based on the majority's assessment of "[c]ontemporary societal attitudes," small-scale retail sales of marijuana are not morally turpitudinous. *See* Opin. at 17–18, 20 (emphasis added). This alternative theory is also wrong.

The BIA has stated that, in assessing whether an offense is a crime involving moral turpitude, "the nature of [the] crime is measured against contemporary moral standards and may be susceptible to change based on the prevailing views in society." *Matter of Lopez-Meza*, 22 I. & N. Dec. 1188, 1192 (1999). Even assuming arguendo that this view is correct,[2] it does not support the majority's conclusion here.

---

[2] We do not appear to have ever explicitly adopted that view until today's decision. On the contrary, in applying the categorical approach under the various provisions of the INA, we have generally made time-of-conviction comparisons, rather than time-of-removal comparisons. *See*, *e.g.*, *Medina-Rodriguez v. Barr*, 979 F.3d 738, 749 (9th Cir. 2020) (holding that the determination whether a particular drug offense is an aggravated felony must be based on "the time-of-conviction federal drug schedule" and that a subsequent federal amendment decriminalizing hemp therefore did not destroy the categorical match under prior law); *Dominguez v. Barr*, 975 F.3d 725, 735 n.3 (9th Cir. 2020) (holding that, in examining whether a particular offense is an aggravated felony, "we consider the law that the petitioner was convicted of violating as it applied at the time of conviction"); *see also Velasquez-Rios v. Wilkinson*, 988 F.3d 1081, 1089 (9th Cir. 2021) (holding that federal immigration consequences of state convictions "cannot be altered or contradicted retroactively by state law actions"). As we have recognized, using a time-of-removal standard would make it impossible to discern the immigration consequences of an offense at the time of conviction. *See Medina-Rodriguez*, 979 F.3d at 748; *see also Velasquez-Rios*, 988 F.3d at 1087 (noting that a time-of-conviction approach avoids the "absurd result[]" that "an alien's removability would depend upon the timing of the immigration proceeding") (simplified). This latter criticism would seem to apply equally to a determination of moral turpitude: an alien cannot know, at the time he or she is convicted of an offense, whether the moral turpitude of that offense will be viewed more harshly or less harshly under future standards applied many years later. (Separately, I would also note that the majority's reliance upon caselaw holding certain criminal statutes unconstitutional is wholly inapposite: of course, the applicable current constitutional limits must always be obeyed, but that rule has no application here given that small-scale marijuana sales are not constitutionally protected. *See United States v. Christie*, 825 F.3d 1048,

In making contemporary judgments about moral turpitude, our analysis must be guided by more objective considerations rooted in the relevant body of law than by our own subjective moral intuitions derived from our reading of polling data and law review commentary. *Cf.* Opin. at 18–19. Indeed, the latter approach would greatly exacerbate the potential vagueness objections to the entire enterprise of defining "crimes of moral turpitude." *Cf. Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1251–61 (9th Cir. 2019) (W. Fletcher, J., concurring). Here, the available objective legal indicia do not support the majority's conclusion that illicit small-scale retail sales of marijuana are not morally turpitudinous.

The majority notes that, long after Walcott's offenses, Arizona voters in 2020 adopted Proposition 207, which decriminalizes possession of "one ounce or less of marijuana." *See* ARIZ. REV. STATS. § 36-2852(A)(1); *see also* Opin. at 18–19. But nothing in that law decriminalizes Walcott's conduct. On the contrary, Proposition 207 authorizes sales only by licensed and heavily regulated marijuana establishments and their agents, *see* ARIZ. REV. STATS. § 36-2858(A)(1)(c), and it decriminalizes transfer of marijuana among individuals only "if the transfer is *without remuneration* and is not advertised or promoted to the public." *Id.* § 36-2852(A)(3) (emphasis added). Likewise, the fact that many other States and the District of Columbia have also legalized some form of recreational marijuana usage since Walcott's offenses, *see* Opin. at 18, does not

1065–66 (9th Cir. 2016); *Gonzalez v. Raich*, 500 F.3d 850, 865 (9th Cir. 2007).) Ultimately, however, I need not take a position as to whether moral turpitude should be assessed under time-of-removal standards or time-of-conviction standards—and I do not do so—because I conclude that the majority's theory fails in any event.

establish that illicit small-scale retail *sales* are not morally turpitudinous. Moreover, the phrase at issue here—"crime of moral turpitude"—is contained in a federal statute, and as noted earlier, the relevant objective indicia in federal law do not support the particular line that the majority has drawn between small-scale retail sales and larger retail or wholesale sales. *See supra* at 28–29. Rather, the line that emerges from these materials is instead exactly the one that the BIA drew here—namely, a distinction between small-scaling sharing of marijuana *for free* and all other unlawful trafficking in marijuana (including illicit *sales* of marijuana in any quantity).

More broadly, the majority's alternative argument once again proves too much and is difficult to square with *Barragan-Lopez*. The majority's reliance on polling data suggesting that 67% of Americans favor marijuana legalization, as well as the majority's survey of the legalization movement in the States, *see* Opin. at 18–19, would seem to suggest that marijuana trafficking should be altogether excluded from the category of crimes involving moral turpitude. *Barragan-Lopez* requires us to reject that position, because it squarely holds that the offense of *selling* more than four pounds of marijuana is a crime of moral turpitude. The majority's broad-based arguments that marijuana is supposedly not that harmful[3] and that contemporary moral views concerning its use have shifted, do not logically support drawing a line, in terms of moral

---

[3] *But cf.* U.S. DEA, *Denial of Petition to Initiate Proceedings to Reschedule Marijuana*, 81 Fed. Reg. 53688, 53691 (2016) (detailing the Food and Drug Administration's conclusion that some individuals use marijuana "in amounts sufficient to create a hazard to their health and to the safety of other individuals and the community").

turpitude, between illicit marijuana retailers and wholesalers. By contrast, the BIA's line—which distinguishes between small-scale sharing for free and all other trafficking—is based on a rationale that logically coheres both with *Barragan-Lopez* and with the comparable judgments reflected elsewhere in federal law.

Accordingly, I would uphold the BIA's conclusion that Walcott's 2010 and 2011 Arizona convictions were for crimes of moral turpitude and that she is therefore removable under INA § 237(a)(2)(A)(ii).

## III

Walcott provides no other persuasive basis for setting aside her removal order, and I therefore would deny her petition for review.

## A

Walcott contends that, because her initial notice to appear did not include the date and time of the hearing, the immigration court did not acquire jurisdiction over her removal proceedings. But we have held that such defects do not preclude jurisdiction from vesting in a particular immigration court when the notice to appear was filed in that court, especially where (as here) the correct hearing information was supplied in a subsequent notice served on the alien prior to the scheduled hearing. *See Aguilar Fermin v. Barr*, 958 F.3d 887, 894–95 (9th Cir. 2020); *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019).

## B

Walcott also challenges the agency's denial of her request for cancellation of removal under INA § 240A.  However, we lack jurisdiction to review the agency's ultimate discretionary determination that Walcott does not merit cancellation of removal.  *Vilchez v. Holder*, 682 F.3d 1195, 1201 (9th Cir. 2012).    Although we retain jurisdiction to review constitutional claims and questions of law concerning the denial of cancellation of removal, *see* 8 U.S.C. § 1252(a)(2)(D), Walcott has raised no meritorious legal or constitutional issues.

The immigration judge did not commit any legal error in connection with her finding that Walcott—who admitted committing perjury at an earlier hearing in her removal proceedings—was ultimately not a credible witness. Although Walcott blames her then-counsel for that perjury, an ineffective assistance of counsel claim based on that theory fails because Walcott did not comply with the procedural requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), and because she did not properly exhaust any such claim before the agency.  *Al Ramahi v. Holder*, 725 F.3d 1133, 1139 (9th Cir. 2013); *Hernandez Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004).

Walcott also contends that the immigration judge violated her due process rights by referencing the judge's personal experiences practicing criminal law during the hearing.  Far from being a due process violation, the judge's comments properly flagged significant potential credibility issues concerning Walcott's testimony.  As to one such point, relating to Walcott's testimony about having served as an undercover informant, the judge urged her counsel to fully

explore the matter and stated that the court would issue any necessary subpoenas for testimony that Walcott might need. As to another point, the judge properly explained the credibility issue that had been raised by the Government and expressly provided Walcott an opportunity "to comment and/or explain." *Cf. Chen v. Ashcroft*, 362 F.3d 611, 618 (9th Cir. 2004) (emphasizing the importance of affording aliens a reasonable opportunity to explain perceived inconsistencies in testimony). Walcott has not established that there was a due process violation. *See Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926–27 (9th Cir.2007) ("Where an alien is given a full and fair opportunity to be represented by counsel, to prepare an application for . . . relief, and to present testimony and other evidence in support of the application, he or she has been provided with due process.").

## IV

For these reasons, I would deny Walcott's petition for review. To the extent that the majority concludes otherwise, I respectfully dissent.